

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2005

# USA v. Hendricks

Precedential or Non-Precedential: Precedential

Docket No. 04-2465

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Hendricks" (2005). *2005 Decisions*. Paper 1536.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1536

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATE COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 04-2465

_____

UNITED STATES OF AMERICA,
<u>Appellant</u>

v.

CRAIG M. HENDRICKS; RUSSELL ROBINSON
ELROY DOWE; DANIEL FLEMING;
RANNEY LARONDE; ANDY ANTOINE;
RUDOLPH CLARK; RAFAEL CINTRON;
KALISHA MARTIN; JACQUELYN CARR

_____

On Appeal from the District Court
for the Virgin Islands
(D.C. No. 04-cr-00005  )
District Judge: Honorable Raymond L. Finch

_____

Argued December 16, 2004

Before: SLOVITER, FUENTES, and GREENBERG, <u>Circuit
Judges</u>.

(Filed: January 14, 2005)

_____

David M. Nissman
        U.S. Attorney
Anthony J. Jenkins
        Acting U.S. Attorney

Patricia M. Sulzbach    (Argued)
     Assistant U.S. Attorney
District of the Virgin Islands

Cynthia Stone
     Senior Trial Attorney
Criminal Division
U.S. Department of Justice
Washington, DC 20530

     Attorneys for Appellant

Eric S. Chancellor
Christiansted, St. Croix, USVI 00820

     Attorney for Appellee Elroy Dowe

Andrew L. Capdeville   (Argued)
St. Thomas, USVI 00804

     Attorneys for Appellee Craig M. Hendricks

Leonard B. Francis, Jr.
Charlotte Amalie, St. Thomas, USVI 00801

     Attorney for Appellee Daniel Fleming

Kevin W. Weatherbee
Charlotte Amalie, St. Thomas, USVI 00802

     Attorney for Appellee Ranney Laronde

Clive Rivers
Charlotte Amalie, St. Thomas, USVI 00802

     Attorney for Appellee Andy Antoine

Treston E. Moore
Charlotte Amalie, St. Thomas, USVI 00804

    Attorney for Appellee Rafael Cintron

Jomo Meade
Frederiksted, St. Croix, USVI 00840

    Attorney for Appellee Jacqueline Carr


OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this interlocutory appeal filed by the United States we must interpret for the first time for this court the meaning of "testimonial evidence" as used in the Supreme Court's recent decision in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), and determine its application to legally obtained wiretap evidence and evidence of conversations between some of the Defendants and a murdered confidential informant ("CI"). The District Court for the Virgin Islands,[1] in ruling on the Government's motion in limine, held that because of Crawford such evidence could not be introduced at trial. The United States appeals. For the reasons explained below, we will reverse the decision of the District Court, and will remand in order to afford the District Court the opportunity to analyze the disputed evidence under the proper standards.[2]

---

[1] The District Court has continuing jurisdiction over this case under 18 U.S.C. § 3231 and 48 U.S.C. § 1612; this court has jurisdiction over this interlocutory appeal pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1294(3).

[2] The District Court also issued a pretrial ruling suppressing a post-arrest statement of Appellee Craig Hendricks because it found that "Hendricks never waived his right to have counsel present during the [custodial] interview by law enforcement officials." J.A. at 40. The United States initially filed a notice

**I.**

On April 11, 2003, a federal grand jury sitting in the United States Virgin Islands returned a multi-count indictment charging Defendants/Appellees Andy Antoine, Jacquelyn Carr, Rafael Cintron, Rudolph Clarke, Elroy Dowe, Daniel Fleming, Craig M. Hendricks, Ranney Laronde, and Russell Robinson with one or more counts of conspiracy, narcotics possession and distribution, and money laundering.[3]  According to the indictment, Hendricks, who is the owner of a facially-legitimate marine services business, was the leader of a large-scale narcotics-trafficking organization, which prior to the arrests of the Defendants, imported and distributed cocaine and marijuana throughout the United States Virgin Islands and elsewhere.

On January 12, 2004, the United States filed a motion in limine seeking pretrial rulings on the admissibility of, inter alia: (1) electronic surveillance tapes obtained pursuant to a court authorized wiretap issued under 18 U.S.C. § 2510 et seq. (hereinafter the "Title III recordings"); and (2) recordings of conversations between confidential informant Hector Rivera ("CI Rivera") and various of the Defendants.[4]  The United States maintained that the recordings and conversations at issue qualified either as admissions of a party opponent, see Fed. R. Evid. 801(d)(2)(A), coconspirator statements, see Fed. R. Evid. 801(d)(2)(E), statements against interest, see Fed. R. Evid. 804(b)(3), or as statements covered by the residual hearsay

---

appealing this decision, but subsequently dismissed that facet of its appeal.

[3]  Although the case was originally brought in the District Court for the Virgin Islands, Division of St. Thomas and St. John, the District Court granted the Government's motion for a change of vicinage and transferred the matter to the District Court for the Virgin Islands, Division of St. Croix.  J.A. at 94; see generally Gov't of V.I. v. Scatliffe, 580 F. Supp. 1482, 1485 (D. V.I. 1984).

[4]  CI Rivera was murdered shortly after the indictment was returned.

4

exception, see Fed. R. Evid. 807, and thus were admissible.

In a Memorandum Opinion dated April 27, 2004, the District Court ruled that Crawford, in which the Supreme Court interpreted the Confrontation Clause of the Sixth Amendment of the United States Constitution, "has superceded the Federal Rules of Evidence in barring all out-of-court statements made by an unavailable witness whom a defendant has not had the chance to cross-examine, with exceptions only for dying declarations and forfeiture for wrongdoing." J.A. at 38.[5] The District Court noted that the Defendants never had an opportunity to cross-examine CI Rivera and that due to CI Rivera's death, he would not be available to testify at trial. The District Court therefore ruled that the United States could not introduce the conversations involving CI Rivera at trial.

Similarly, regarding the Title III recordings, the District Court noted that the United States had "not shown that any statement recorded on the wiretap was made by a person who is no longer available and whom Defendants have had an opportunity to cross-examine." J.A. at 39-40. Thus, it ruled that the United States could not introduce at trial any statements intercepted in the Title III wiretaps except those "statements made by a witness who testifies at trial." J.A. at 40.

The United States thereafter filed a Motion for Reconsideration. In its motion, the Government noted that the rule announced in Crawford is only applicable to so-called "testimonial" hearsay statements. J.A. at 48 (citing Crawford,

---

[5] The United States had maintained that the Defendants were responsible for CI Rivera's death and thus, at least as to the conversations involving CI Rivera, had forfeited by wrongdoing any protection offered by the rule against hearsay, see Fed. R. Evid. 804(b)(6), or the Sixth Amendment, see Reynolds v. United States, 98 U.S. 145, 158-59 (1878). The District Court rejected this argument, finding that the United States was "unable to establish a conclusive link between [the Defendants] and the murder of Hector Rivera." J.A. at 39. That ruling is not before this court.

541 U.S. at __, 124 S. Ct. at 1374). It follows, the Government argued, that "'nontestimonial hearsay statements may still be admitted as evidence against an accused . . . if [they] satisf[y] both prongs of the [Ohio v.] Roberts[, 448 U.S. 56 (1980),] test.'" J.A. at 47 (quoting State v. Rivera, 844 A.2d 191, 201 (Conn. 2004)). The United States urged that none of the evidence at issue fell within the definition of testimonial hearsay; it contended that therefore the evidence was not subject to the rule of Crawford.

By Order dated May 11, 2004, the District Court denied the United States' Motion for Reconsideration. Although it agreed with the Government that the Crawford holding is inapplicable to nontestimonial statements, it found that the evidence at issue qualified as testimonial statements and thus fell within the rule of Crawford. The United States thereafter lodged this timely interlocutory appeal. See generally 18 U.S.C. § 3731 ("An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment . . . .").

**II.**

The District Court's decision to exclude the evidence at issue turned on its application of the Sixth Amendment and its interpretation of the Supreme Court's decision in Crawford. This interlocutory appeal thus presents a question of law which we review de novo. United States v. Trala, 386 F.3d 536, 543 (3d Cir. 2004); United States v. Barbosa, 271 F.3d 438, 452 (3d Cir. 2001).

As noted by the United States Court of Appeals for the First Circuit, the recent decision in Crawford has "changed the legal landscape for determining whether the admission of . . . hearsay statements violates the accused's right[s]" under the Confrontation Clause. Horton v. Allen, 370 F.3d 75, 83 (1st Cir. 2004); see also United States v. McClain, 377 F.3d 219, 221 (2d Cir. 2004) ("Crawford redefines the Court's Sixth Amendment jurisprudence . . . ."). A somewhat detailed recounting of that

6

case, therefore, is useful for resolution of the case at bar.

The State of Washington charged Michael D. Crawford with assault and attempted murder for stabbing Kenneth Lee, a man Crawford believed had tried to rape his wife. During the police investigation, both Crawford and his wife gave formal statements to law enforcement officials. In her statement, Mrs. Crawford generally corroborated her husband's version of the events leading up to the fight; however, her account of the fight itself was arguably different from that of her husband with respect to whether Lee had drawn a weapon before Crawford struck him. Crawford, 541 U.S. at __, 124 S. Ct. at 1357.

At trial, Crawford claimed self-defense. Under a Washington statute regarding marital privilege, Mrs. Crawford was "unavailable" to testify. 541 U.S. at __, 124 S. Ct. at 1357-58. The prosecution sought to have Mrs. Crawford's statements to the police admitted through a codified hearsay exception. In response, Crawford argued that, notwithstanding the hearsay exception, the admission of his wife's statements would violate the Confrontation Clause. The trial court, relying on Ohio v. Roberts, 448 U.S. 56 (1980), found Mrs. Crawford's statements "trustworthy" and thus admitted them. Crawford, 541 U.S. at __, 124 S. Ct. at 1358.

In Roberts, the Supreme Court had held that the Confrontation Clause does not preclude the admission of an unavailable witness's hearsay statement if it bears "adequate indicia of reliability." Roberts, 448 U.S. at 66 (internal quotations and citations omitted). Under Roberts, a hearsay statement contains "adequate indicia of reliability" if it falls within a "firmly rooted hearsay exception" or if it bears "particularized guarantees of trustworthiness." Id. Applying this test, the trial court found Mrs. Crawford's statements trustworthy and therefore admissible. Although the Washington Court of Appeals reversed that decision, citing reasons why Mrs. Crawford's statements were not trustworthy, the Washington Supreme Court agreed with the trial court that Mrs. Crawford's statements showed sufficient evidence of trustworthiness to be admitted. 541 U.S. at __, 124 S. Ct. at 1358. The United States

7

Supreme Court granted Crawford's petition for certiorari.

Justice Scalia, writing for the Court, began by highlighting the differences between the common law practice of receiving evidence through live testimony in court subject to adversarial testing with the civil law practice of receiving evidence through ex parte private examinations of witnesses by government officials. Although the Court noted that common law systems had occasionally adopted and utilized elements of the civil law practice (referring at some length to the notorious English trial of Sir Walter Raleigh), it recognized that, as illustrated by various state constitutional provisions circa 1776, the introduction of government-sponsored ex parte examinations against an accused has long been considered an anathema in common law systems in general and in the American system in particular. 541 U.S. at __, 124 S. Ct. at 1359-63.

After surveying various founding-era sources, the Court stated that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." 541 U.S. at __, 124 S. Ct. at 1363; see also United States v. Lee, 374 F.3d 637, 644 (8th Cir. 2004) (discussing Crawford, noting: "The central function of this right [of confrontation] is to protect individuals from the use of ex parte statements as evidence against them in a criminal trial"). With the principal focus of the Confrontation Clause thus established, the Court proceeded to uncouple the rationale undergirding the prohibition against hearsay from the impetus behind the Confrontation Clause, suggesting "that not all hearsay implicates the Sixth Amendment's core concerns." 541 U.S. at __, 124 S. Ct. at 1364; see also Thomas J. Reed, Crawford v. Washington & the Irretrievable Breakdown of a Union: Separating the Confrontation Clause from the Hearsay Rule, 56 S.C. L. Rev. 185 (2004). It continued:

> An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause

targeted. On the other hand, ex parte examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.

Crawford, 541 U.S. at __, 124 S. Ct. at 1364.

The Crawford Court noted that the text of the Confrontation Clause is supportive of this distinction. The Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Thus, the Clause applies to "'witnesses' against the accused--in other words, those who 'bear testimony.'" 541 U.S. at __, 124 S. Ct. at 1364 (emphasis added) (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). As recognized by the Crawford Court: "'Testimony,' is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" 541 U.S. at __, 124 S. Ct. at 1364 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). Thus, a person "who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Crawford, 541 U.S. at __, 124 S. Ct. at 1364.

After engaging in this historical and textual analysis, the Court concluded that, even if the Confrontation Clause "is not solely concerned with testimonial hearsay, that is its primary object." Crawford, 541 U.S. at __, 124 S. Ct. at 1365. The Court further opined that, "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" 541 U.S. at __, 124 S. Ct. at 1370.

Therefore, the Court, partially abrogating Roberts, held that "testimonial" hearsay statements may not be introduced against a defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. at __, 124 S. Ct. at 1374. Importantly, this

outcome obtains regardless of whether the statement at issue falls within a firmly rooted hearsay exception or has a particularized guarantee of trustworthiness. Id.[6] In sum, insofar as "testimonial" evidence is concerned, Crawford replaced the malleable judicial inquiry mandated by Roberts with a virtually per se rule of exclusion. See United States v. Saget, 377 F.3d 223, 226-27 (2d Cir. 2004) ("It is clear that a court faced with an out-of-court testimonial statement need not perform the Roberts reliability analysis, as Crawford replaces that analysis with a bright-line rule drawn from the historical origins of the Confrontation Clause.").

The lynchpin of the Crawford decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in Crawford applies only to the former category of statements. Crawford, 541 U.S. at __, 124 S. Ct. at 1374. As the Court explained: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford . . . flexibility in the[] development of hearsay law--as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Id.[7] Thus, unless a particular hearsay statement qualifies as

_____

[6] The Court, however, did recognize two potential exceptions to this otherwise per se rule: (1) dying declarations, Crawford, 541 U.S. at __, 124 S. Ct. at 1367 n.6; and (2) forfeiture by wrongdoing, id. at __, 124. S. Ct. at 1370. See also supra, footnote 5.

[7] Some commentators have interpreted this statement as suggesting that in the future the Court may abrogate completely the Roberts holding and exclude nontestimonial statements entirely from the ambit of the Confrontation Clause. See Edward J. Imwinkelried, The Treatment of Prosecution Hearsay Under Crawford v. Washington: Some Good News But . . . ., The Champion, Oct. 2004, at 16, 18 ("The [Crawford] majority's harsh criticism of Roberts' reliability standard makes it even more likely that the Court will eventually relax the standard for admitting nontestimonial hearsay."). Such a development in Sixth Amendment jurisprudence is beyond the province of this court. Cf.

10

"testimonial," <u>Crawford</u> is inapplicable and <u>Roberts</u> still controls.

Notwithstanding the centrality of the term to its decision, the <u>Crawford</u> Court expressly declined to provide a comprehensive definition of "testimonial statements." <u>Crawford</u>, 541 U.S. at __, 124 S. Ct. at 1374; <u>id.</u> at __, 124 S. Ct. at 1378 (Rehnquist, C.J., concurring). It did, however, reference several "formulations of [the] core class of 'testimonial' statements" and further provided some concrete examples of evidence that is obviously testimonial. <u>Crawford</u>, 541 U.S. at __, 124 S. Ct. at 1364; <u>see also</u> <u>United States v. Manfre</u>, 368 F.3d 832, 838 n.1 (8th Cir. 2004) ("The Court in <u>Crawford</u> specifically left ambiguous the definition of 'testimonial' but did not leave us without some bench marks.").

Crawford had suggested defining testimonial statements as "'<u>ex parte</u> in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'" 541 U.S. at __, 124 S. Ct. at 1364 (quoting Brief for Petitioner Crawford). In its opinion, the Court adopted Crawford's suggestion as examples of testimonial statements to which its opinion would apply. The Court also referred to Justice Thomas' earlier definition of "testimonial statements" as "'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" 541 U.S. at __, 124 S. Ct. at 1364 (quoting <u>White v. Illinois</u>, 502 U.S. 346, 365 (1992) (Thomas, J., concurring)). The third and broadest formulation, offered to the Court by <u>amicus curiae</u> the National Association of Criminal Defense Lawyers ("NACDL"), would define testimonial statements as those "'made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial.'"

_____

<u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997); <u>Sierra v. Romaine</u>, 347 F.3d 559, 575 n.27 (3d Cir. 2003).

11

541 U.S. at __, 124 S. Ct. 1364 (quoting Brief of NACDL). Finally, the Court provided several concrete examples of obviously testimonial statements, referencing: "prior testimony [given] at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at __, 124 S. Ct. at 1374.

As we noted above, the Court declined to adopt any specific definition of "testimonial statements." Instead, it resolved the case by noting that formal "[s]tatements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." Crawford, 541 U.S. at __, 124 S. Ct. 1364. The Court therefore held that the trial court's admission of Mrs. Crawford's statements to the police as evidence against Crawford violated his rights under the Sixth Amendment.

With this summary in place, it is now appropriate to consider how the Confrontation Clause analysis in Crawford applies to the case at bar.

## A. The Title III Recordings

Following the decision in Crawford, the courts of appeals have struggled with the definition of "testimonial hearsay." See, e.g., United States v. Rodriguez-Marrero, 390 F.3d 1, 17 (1st Cir. 2004) ("We conclude that Llaurador's signed confession, presented under oath to the prosecutor in Puerto Rico, is testimonial hearsay within the meaning given by the Supreme Court [in Crawford]."); United States v. Cromer, 389 F.3d 662, 674 (6th Cir. 2004) (stating that "[a] statement made knowingly to the authorities that describes criminal activity is almost always testimonial" and thus concluding that CI's statement to police wherein CI implicated defendant in criminal activity constituted testimonial hearsay); Parle v. Runnels, 387 F.3d 1030, 1037 (9th Cir. 2004) (suggesting, in dictum, that statements contained in diary constituted nontestimonial hearsay); United States v. Bruno, 383 F.3d 65, 78 (2d Cir. 2004) (stating that plea allocution transcript and grand jury testimony of unavailable witnesses constituted testimonial hearsay); see generally Robert P. Mosteller, Crawford v. Washington: Encouraging & Securing

12

the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511, 533-615 (2005).

Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., a duly authorized law enforcement officer must obtain approval from the United States Attorney General or a designated Assistant Attorney General in order to apply to a federal judge for approval to intercept and record wire communications. 18 U.S.C. § 2516(1); see also United States v. Giordano, 416 U.S. 505, 512-13 (1974). Once such approval is obtained, the officer must present to a judge a written application for a wiretap, 18 U.S.C. § 2518, which must contain an adequate and particularized showing of probable cause. 18 U.S.C. § 2518(3)(b). It must also contain a showing of necessity, 18 U.S.C. § 2518(3)(c), and explain why "normal investigative techniques would be of no avail." United States v. Adams, 759 F.2d 1099, 1114 (3d Cir. 1985). The Government must further take steps to minimize the monitoring of nonpertinent conversations and otherwise to limit invasions of privacy. 18 U.S.C. § 2518(5); see generally United States v. Sorapuru, 902 F. Supp. 1322 (D. Colo. 1995). In the instant case, the District Court determined that the wiretaps at issue were "legally sufficient in terms of authority, probable cause, necessity, and minimization." J.A. at 39. Those findings are not before this court.

As recounted in Section I, the District Court ruled that multiple conversations between the various Defendants and other third parties surreptitiously intercepted by law enforcement through Title III wiretaps were testimonial statements and thus inadmissible unless the particular speakers in any given conversation were to testify at trial. The District Court's decision to exclude the Title III recordings on the basis of Crawford--under any conceivable definition of "testimonial"--was error. Indeed, at oral argument, counsel for the defense was unable to argue to the contrary.

First and foremost, the recorded conversations here at issue neither fall within nor are analogous to any of the specific examples of testimonial statements mentioned by the Court.

13

Crawford, 541 U.S. at __, 124 S. Ct. at 1374 (listing "prior testimony [given] at a preliminary hearing, before a grand jury, or at a former trial[,] and . . . police interrogations" as examples of obviously testimonial statements). Second, the recorded conversations do not qualify as "testimonial" under any of the three definitions mentioned by the Court. They are not "ex parte in-court testimony or its functional equivalent," nor are they "extrajudicial statements . . . contained in formalized . . . materials, such as affidavits, depositions, prior testimony, or confessions." 541 U.S. at __, 124 S. Ct. at 1364 (internal citations and quotations omitted). Each of the examples referred to by the Court or the definitions it considered entails a formality to the statement absent from the recorded statements at issue here. Even considered in perspective of the broad definition offered by the NACDL, the Title III recordings cannot be deemed "testimonial" as the speakers certainly did not make the statements thinking that they "'would be available for use at a later trial.'" Crawford, 541 U.S. at __, 124 S. Ct. 1364 (quoting Brief of NACDL). Rather, the very purpose of Title III intercepts is to capture conversations that the participants believe are not being heard by the authorities and will not be available for use in a prosecution.

A witness "who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Crawford, 541 U.S. at __, 124 S. Ct. at 1364. The Title III recordings here at issue are much more similar to the latter than the former. Therefore, as recognized by other courts that have addressed similar issues, we find that the surreptitiously monitored conversations and statements contained in the Title III recordings are not "testimonial" for purposes of Crawford. See Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004) (finding "statements . . . made during a private conversation" nontestimonial); State v. Rivera, 844 A.2d 191, 202 (Conn. 2004) ("Glanville made the statement in confidence and on his own initiative to a close family member . . . . [It] clearly does not fall within the core category of ex parte testimonial statements that the court was concerned with in Crawford."). Cf. United States v. Robinson, 367 F.3d 278, 292 n.20 (5th Cir. 2004) ("[T]he statement challenged as hearsay was

14

made during the course of the conspiracy and is non-testimonial in nature."); United States v. Reyes, 362 F.3d 536, 541 n.4 (8th Cir. 2004) ("[C]o-conspirator statements are nontestimonial."); People v. Cook, 815 N.E.2d 879, 893 (Ill. App. Ct. 2004) ("[I]f the statements in question qualify as co-conspirator statements, the rule announced in Crawford does not apply to bar their admission.").

Inasmuch as the District Court erroneously interpreted the Crawford ruling as requiring the rejection of the Title III recordings, we will reverse its order denying the United States' motion in limine. As we concluded above, the Title III recordings are not testimonial. Because of the District Court's reliance on Crawford, it never considered whether the Title III conversations were admissible under the proper standards set forth in the Federal Rules of Evidence and, to the extent it is applicable, the reliability standard under Roberts, 448 U.S. at 66. But see Bourjaily v. United States, 483 U.S. 171, 183-84 (1987) ("[W]e hold that the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of [Fed. R. Evid.] 801(d)(2)(E)."). Cf. United States v. Inadi, 475 U.S. 387, 399-400 (1986) (holding that Confrontation Clause does not require the prosecution to show that 801(d)(2)(E) declarant is unavailable). Therefore, on remand the District Court is directed to determine on an individualized basis whether each of the Title III recordings is admissible (and, if admissible, against whom and for what purpose).[8]

## B. The Conversations Involving CI Rivera

The District Court also ruled that the United States could

---

[8] For example, if the United States urges that a particular Title III recording is admissible as a coconspirator statement, the District Court must determine, inter alia, that the statement was made "'in furtherance of'" the conspiracy. United States v. Ellis, 156 F.3d 493, 496 (3d Cir. 1998) (quoting and construing Fed. R. Evid. 801(d)(2)(E)). We take no position on whether the District Court should undertake such inquiries prior to trial, or during the course of trial as the various objections arise.

not introduce conversations between CI Rivera and various of the Defendants. Although occasionally a telephone conversation between Rivera and one of the Defendants was caught in a Title III wiretap, the conversations that fall within this heading are face-to-face conversations that were recorded by Rivera wearing a taping device provided by the Government. It cannot be disputed that CI Rivera knew of the Government's surreptitious recording and documentation of these conversations. The District Court noted that, "[i]n discussing the 'core' class of statements that are considered testimonial, the . . . [Crawford] Court specifically included '. . . pretrial statements that declarants would reasonably expect to be used prosecutorially.'" J.A. at 68 (quoting Crawford, 541 U.S. at __, 124 S. Ct. at 1364). The District Court reasoned that because CI Rivera was working with the Government for the very reason of obtaining evidence against the Defendants for use in the Government's investigation and prosecution, the conversations fell within the rule of Crawford.

The District Court's analysis is not without some appeal. Insofar as they contain the statements of CI Rivera, the conversations reasonably could be categorized as involving statements that Rivera expected to be used prosecutorially; obtaining evidence for the prosecution is, after all, the raison d'être of being a confidential informant.[9] However, the Crawford decision cites with approval Bourjaily v. United States, 483 U.S. 171 (1987), a case in which the Court rejected a Confrontation Clause objection to the admission of a

---

[9] Of course, the various defendants and coconspirators, as the other half of the conversational equation, certainly did not realize that their statements were going to be used prosecutorially. And, as explained in the above text, because they constitute admissions unwittingly made, the defendants and coconspirators' portions of the CI Rivera conversations are clearly nontestimonial statements and are thus not subject to the Crawford rule. See United States v. Saget, 377 F.3d 223, 229-30 (2d Cir. 2004) ("We . . . conclude that Beckham's statements to the CI were not testimonial, and Crawford does not bar their admission.").

16

conversation between a co-defendant and a confidential police informant. Indeed, the <u>Crawford</u> Court referenced <u>Bourjaily</u> as an example of a case in which nontestimonial statements were correctly admitted against the defendant despite the lack of a prior opportunity for cross-examination. <u>See</u> <u>Crawford</u>, 541 U.S. at __, 124 S.Ct. at 1368 (citing <u>Bourjaily</u>, 483 U.S. at 181-84).

In <u>Bourjaily</u>, the Court addressed the admissibility of admissions made unwittingly by William Bourjaily's co-defendant (and purported coconspirator) to an informant. The Court held that even though Bourjaily had not had a prior opportunity to cross-examine his co-defendant regarding the statements, if the statements were admissible under Fed. R. Evid. 801(d)(2)(E) their introduction as evidence against Bourjaily did not run afoul of the Confrontation Clause. <u>Bourjaily</u>, 483 U.S. at 183. The Court reached this outcome despite the fact that the co-defendant was, due to his invocation of the privilege against self-incrimination, "unavailable" to testify at trial. <u>Bourjaily</u>, 483 U.S. at 182. As mentioned, <u>Crawford</u> approved of this holding, citing it as an example of a case that is "consistent with" the principle that the Sixth Amendment permits the admission of nontestimonial statements in the absence of a prior opportunity for cross-examination. <u>Crawford</u>, 541 U.S. at __, 124 S.Ct. at 1367.

To be sure, there is a difference between the analysis undertaken by the Court in <u>Bourjaily</u> and the analysis urged by the Defendants here. Specifically, in <u>Bourjaily</u>, the Court focused on the unavailability of the coconspirator whose conversation with a confidential informant the Government sought to introduce. In contrast, the Defendants here emphasize the unavailability of the confidential informant. Stated otherwise, although the <u>Bourjaily</u> Court addressed the Confrontation Clause implications of the admission of conversations with a government informant, it focused on the non-informant half of the conversation.

During oral argument before us, the United States conceded that it was not seeking to introduce the statements of

CI Rivera for their truth and thus correctly argued that the introduction of his statements would present no hearsay problem. See Fed. R. Evid. 801(c). As recognized by the Crawford Court, the Confrontation Clause likewise "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at __, 124 S. Ct. 1369 n.9; see also United States v. Trala, 386 F.3d 536, 544-45 (3d Cir. 2004) (finding no Confrontation Clause violation where reliability of out-of-court statements was not at issue and where the statements were not introduced for their truth). Therefore, even if we were to hold that CI Rivera's statements within the conversations are themselves testimonial, an issue we need not reach, such an outcome would not preclude the United States from introducing CI Rivera's statements for a purpose other than establishing the truth of the matters contained therein.

Due to the Crawford Court's reaffirmation of Bourjaily, we conclude that the party admission and coconspirator portions of the disputed CI Rivera conversations are nontestimonial and thus, assuming compliance with the Federal Rules of Evidence, are admissible. See also Saget, 377 F.3d at 229-30. Stated otherwise, Crawford presents no bar to the admission of the statements of Defendants or their coconspirators made in the conversations with CI Rivera that he surreptitiously recorded.

Under these circumstances, we conclude that the Government should be permitted to introduce the balance of the conversations, i.e., the statements of CI Rivera which, as the Government argues, put the statements of the other parties to the conversations "into perspective and make them intelligible to the jury and recognizable as admissions." United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990) (internal citations and quotations omitted); see also United States v. Stelten, 867 F.2d 453, 454 (8th Cir. 1988) (per curiam); United States v. Gutierrez-Chavez, 842 F.2d 77, 81 (5th Cir. 1988); United States v. Murray, 618 F.2d 892, 900 (2d Cir. 1980); United States v. Lemonakis, 485 F.2d 941, 948-49 (D.C. Cir. 1973).

We thus hold that if a Defendant or his or her

18

coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context.

Accordingly, the District Court's ruling to exclude the conversations involving CI Rivera on the basis of Crawford was error. Nonetheless, as we stated above in respect to the Title III recordings, on remand the District Court must determine on an individualized basis whether each of the disputed conversations is indeed authentic and otherwise admissible under the Rules of Evidence and the decisional law thereon.

## III.

We therefore will grant the United States' appeal, reverse the order of the District Court, and remand for further proceedings not inconsistent with this opinion.[10]

---

[10] In an argument posited in the alternative, Defendant Hendricks, joined by Defendants Laronde and Fleming, argue that even if the District Court misconstrued Crawford, this court should not reverse because the District Court's decision to exclude the disputed evidence was also based on findings of unreliability-- findings to which the Defendants suggest this court should defer. See Br. of Appellee Hendricks at 12. But see Bourjaily, 483 U.S. at 184. The Defendants are correct that reliability determinations are matters peculiarly within the ken of the district courts. See United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003); United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975). Here, however, the District Court's decision to exclude the disputed evidence was based on its erroneous interpretation of Crawford and consequently did not turn on any findings of unreliability. For this reason, the alternative argument is unconvincing.

19