

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-2009

# USA v. Dowe

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3188

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Dowe" (2009). *2009 Decisions.* Paper 1831.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1831

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 06-3188

_____

UNITED STATES OF AMERICA

v.

ELROY DOWE,
                    Appellant

_____

On Appeal From the United States
District Court
For the District of the Virgin Islands
(D.C. Crim. Action No. 04-cr-00005-3)
District Judge:  Honorable James T. Giles

_____

Argued December 9, 2008

BEFORE:  FISHER, JORDAN and STAPLETON,
                    *Circuit Judges*

(Opinion Filed: February 24, 2009)

_____

Jorge E. Rivera-Ortiz (Argued)
P.O. Box 1845
Manati, PR  00674
 Attorney for Appellant

David E. Hollar (Argued)
U.S. Department of Justice
Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
  and
Cynthia Stone
U.S. Department of Justice
Criminal Division
Room 700
1301 New York Avenue, N.W.
Washington, DC  20005
  Attorneys for Appellee

———————

OPINION OF THE COURT

———————

STAPLETON, Circuit Judge:

Appellant Elroy Dowe was convicted of participating in conspiracies to import and distribute cocaine.  He was sentenced to a prison term of 120 months, supervised release of five years, and a $200 special monetary assessment.  This appeal followed.  We will affirm.

I.  Sufficiency of the Evidence

Dowe makes a number of arguments which he regards as supportive of his contention that the evidence was insufficient to support the jury's verdict that he was guilty of conspiring with Craig Hendricks and others to import and distribute controlled substances.  First, Dowe's over-arching argument is that while the government showed

Hendricks to be a substantial drug dealer, it failed to prove that Dowe was anything other than a "car wash boy" for Hendricks. While it is true that Dowe engaged in manual labor at Hendricks' home and marina, Dowe's intercepted telephone conversations together with the law enforcement surveillance provided ample evidence from which a rational jury could conclude beyond a reasonable doubt that Dowe knowingly and willfully agreed to participate in schemes to import and distribute cocaine for profit. A few examples suffice to make this point.

On January 30, 2003, Rivera, an undercover informant, received instructions from DEA Agent Tokarz to set up a five to ten kilogram cocaine transaction. In order to do so, he called Dowe and told him he needed "eight." App. at 266-68. The next day, Dowe and Rivera spoke again, with Dowe confirming, "You say you want that eight right?" App. at 269-70. On February 7, 2003, Agent Tokarz gave Rivera $10,000 for a down payment on the cocaine. Rivera then met with Dowe and Hendricks in front of the Tutu Park Mall Kmart for ten minutes and then went to Hendricks' home. When Rivera next met with Agent Tokarz, he no longer had the money. On February 17, 2003, Rivera and Dowe again spoke on the phone. Dowe informed Rivera that the "man might be getting something later," and "they're going out" so Rivera should be prepared to "go to the bank" and then "come over here." App. at 272-77. Dowe was more than merely present at this drug transaction; his phone calls establish that he was well aware of what was going on and was actively assisting Hendricks' drug conspiracy.

3

On March 1, 2003, Dowe prepared Hendricks' boat for a trip to Tortola which the evidence indicated was a source of Hendricks' drugs. Phone calls that day showed that Dowe was watching Hendricks from shore, presumably to protect and assist him if needed. When Hendricks stopped and idled the boat before coming ashore, Dowe called both Hendricks and an associate of his to make sure things were safe and that the run had not been put "on standby."

On still other occasions, telephone tapes found Dowe seeking information important to Hendricks' operation and passing on information to Hendricks and his associates regarding law enforcement activity.

Dowe next argues that the jury could not have believed him guilty of conspiracy beyond a reasonable doubt because it answered "none" in response to a supplemental verdict sheet inquiring as to the amount of controlled substances Dowe "knew in fact, and/or . . . reasonably foresaw" being involved in the two conspiracies. These findings came to be made because of an unusual, bifurcated trial approach adopted by the District Court. They are not, however, inconsistent with Dowe's conviction on Counts I and XI in the indictment, and the District Court's approach did not in any way prejudice Dowe.

Following all of the evidence, the District Court explained to the jury all of the elements that the government would have to prove beyond a reasonable doubt to warrant convictions on the conspiracy charges. It severed for subsequent consideration, however, the issue of whether the conspiracies involved five kilograms or more of cocaine and

instructed the jury that it need only find that the conspiracies involved a "detectable amount" of cocaine in order to find Dowe guilty.

After the jury found Dowe "guilty" on Counts I and XI, the District Court did not discharge the jury. Instead, it told the jurors that they would now be asked to resume deliberations and fill out a supplemental verdict sheet inquiring as to the amount of cocaine each of the four defendants convicted of Counts I and XI "knew in fact, and/or . . . reasonably foresaw" being involved in the conspiracies. The jury was instructed that it must apply a beyond a reasonable doubt standard and unanimously agree on its answers. With respect to defendants Hendricks and Fleming, in the context of both Counts I and XI, the jury checked "Yes" next to the line "Five (5) kilograms or more of cocaine." With respect to Dowe, in the context of both of those counts, the jury checked "No" for all possible responses, including the response for "Less than 500 grams of cocaine."

When a drug conspiracy is alleged, the quantity involved is offense-specific, rather than defendant-specific. That is, the jury must determine "the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator." *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003), *vacated and remanded on Booker grounds sub nom. Barbour v. United States*, 543 U.S. 1102 (2005); *see also United States v. Stiger*, 413 F.3d 1185, 1192 (10th Cir. 2005) (collecting cases). It is only at the sentencing phase that a finding needs to be made about the responsibility of individual conspirators. That finding is ordinarily made by the judge

5

based upon a preponderance of the evidence. *See Phillips*, 349 F.3d at 143.

Given that the combined total amount of controlled substance found on the supplemental verdict sheet for all defendants found guilty on Counts I and XI exceeds five kilograms in each instance, it is clear that the jury found each of those defendants guilty beyond a reasonable doubt of participating in conspiracies involving more than five kilograms. Moreover, there is nothing in that document which is inconsistent with Dowe's convictions as charged in those counts. To the extent, if any, that Dowe's sentence was influenced by this finding, it cannot have been to his prejudice.

Contrary to Dowe's suggestion, we do not view the jury's "No" finding as in any way inconsistent with its finding of guilt. Given the evidence, it is quite likely that the jury believed Dowe had agreed to help the conspiracies but was in no position to know or have reason to know the amount of controlled substances involved.

Dowe further argues that the fact that the District Court granted him a judgment of acquittal on Counts V and VI (aiding and abetting the possession with intent to distribute and the distribution of 500 grams or more of cocaine on October 10, 2002) and the jury acquitted him on Count VII (aiding and abetting the importation of 5 kilograms or more of cocaine on March 1, 2003) is evidence that the government failed to prove the elements of the conspiracy charges. Although not explicitly stated, Dowe's argument is in essence an argument that the acquittals and convictions in this case present inconsistent verdicts.

First, it is not clear that an inconsistency exists. Even without the evidence that Dowe participated in a distribution on October 10, 2002, as alleged in Count V and VI, there was sufficient evidence from which the jury could conclude that he participated in the conspiracy to distribute cocaine alleged in Count I. While a more compelling argument can be made that Dowe's acquittal on Count VII and his conviction on Count XI may be inconsistent, that would not invalidate the latter. The Supreme Court has held that consistency in the verdicts is not necessary, and that each count in an indictment is to be regarded separately. *United States v. Powell*, 469 U.S. 57, 62 (1984). "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *Id*. at 64-65 (quoting *Dunn v. United States,* 284 U.S. 390, 393 (1932)). Here, there is sufficient evidence to support Dowe's convictions.

II. <u>Admission of Intercepted Calls Between Dowe and Rafael Cintron</u>

Rafael Cintron was a police officer with the Virgin Islands Police Department and was tried as a co-defendant. Telephone conversations were admitted between Cintron and Dowe about a drug related incident at Benner Bay. There was no objection to the admission of these conversations, and we review for plain error.

Before us, Dowe contends that the probative value, if any, of those conversations was outweighed by their undue prejudicial effect and that they were inadmissible hearsay

7

given that Cintron was ultimately found not to be a co-conspirator. We cannot agree.

The District Court concluded that these conversations could be understood as evidencing an effort by Dowe to pump Cintron for information about the Benner Bay incident that would be of interest to the conspiracies and, accordingly, that they were highly relevant to whether Dowe was a participant in the conspiracies and not unduly prejudicial. We agree.

Given the purpose for which they were admitted, the conversations were not hearsay. They were capable of being understood as actions taken by Dowe in furtherance of the conspiracies whether or not Cintron was a co-conspirator. Moreover, if regarded as hearsay, Dowe's words to Cintron were admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2), and Cintron's words to Dowe were admissible for the non-hearsay purpose of putting Dowe's statements in context. *See United States v. Hendricks*, 395 F.3d 173, 183 n.9 (3d Cir. 2005).[1]

### III. The Admission of DEA Agent Tokarz's Testimony Regarding His Instructions to the Confidential Informant Rivera, Who Is Now Deceased

Contrary to Dowe's suggestion, testimony of a declarant concerning instructions given to another are not hearsay if offered, as here, to prove that such instructions were

---

[1]Dowe also complains before us of the admission, without objection, of a conversation between Cintron and Thomas Villanueva, another police officer, regarding Cintron's participation in the Benner Bay incident. Its admission was not plain error. Dowe was not mentioned in this conversation and could not have been prejudiced by it.

given. *United States v. Reilly*, 33 F.3d 1396, 1410 (3d Cir. 1994). Accordingly, the testimony of Agent Tokarz regarding his instructions to Rivera was not hearsay. Dowe also argues that Agent Tokarz was improperly permitted to testify that what the jury heard from Rivera on taped conversations between Dowe and Rivera was consistent with Tokarz's instructions. We perceive no error.

The jury was permitted to hear Rivera's side of his conversations with Dowe solely for the purpose of allowing the jury to understand the context in which Dowe's statements were made. Dowe's remarks were, of course, admissible because they were capable of being understood as admissions of a party opponent. *Hendricks*, 395 F.3d at 184.

Tokarz was permitted to testify about Rivera's cooperation and his instructions to Rivera to attempt to buy drugs from Dowe and his co-conspirators because, if credited by the fact finder, this information would make it more likely than it otherwise would be that drug transaction conversations occurred between Rivera and Dowe shortly thereafter. This testimony was thus clearly relevant and, as we have noted, not hearsay.

The same can be said about Tokarz's testimony that Rivera's side of the conversations was consistent with the instructions Tokarz had given him. That testimony makes it more likely than it otherwise would be that Dowe's and Rivera's conversations on the tapes were the drug transactions that the instructions contemplated. This testimony was thus relevant and also not hearsay. Tokarz was available for cross-examination about his instructions to Rivera and about whether Rivera's words recorded on the tapes were

9

consistent with those instructions.  Because Tokarz's testimony was limited to whether Rivera's statements were consistent with the instructions given, he was not, as Dowe argues, testifying as to Rivera's state of mind.

## IV.  <u>Conclusion</u>

We will affirm the judgment of the District Court.