**UNITED STATES of America**

v.

**Brent J. DETELICH, Appellant.**

No. 08–2285.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 29, 2009.

Filed: Nov. 5, 2009.

---

Donovan J. Cocas, Esq., Robert L. Eberhardt, Esq., Office of the United States Attorney, Pittsburgh, PA, for Plaintiff–Appellee.

Robert J. Ridge, Esq., Thorp, Reed & Armstrong, Pittsburgh, PA, for Defendant–Appellant.

Before: SMITH, FISHER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Brent J. Detelich ("Detelich") appeals his conviction of one count of knowingly and willfully executing or attempting to execute a scheme to defraud a health care benefit program in violation of 18 U.S.C. §§ 1347 and 2 and one count of mail fraud in furtherance of the scheme in violation of 18 U.S.C. §§ 1341 and 2. For the reasons below, we will affirm.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Detelich was accused by the Government of leading a scheme to defraud Highmark Blue Cross/Blue Shield ("Highmark") through Advanced Medical and Holistic ("AMH"), the chiropractic practice he owned and operated in Hermitage, Pennsylvania. According to evidence offered at trial, Detelich put his scheme into effect shortly after opening a second AMH office in Niles, Ohio. While in Niles, Detelich would ask office assistants in the Hermitage office to "pull" treatment cards and bill Highmark for treatments supposedly given to certain Highmark-covered patients. Employees of AMH eventually learned that they were billing Highmark for procedures that the patients never received. Evidence was also presented at trial that AMH employees, at Detelich's direction, engaged in "upcoding," a process of billing Highmark for more expensive procedures than those rendered.

Patients with Highmark insurance who were regularly billed for services that were not rendered were referred to by AMH employees as being on the "hit list." Hit list patients would receive reimbursement checks from Highmark, cash them, and bring the money to AMH or directly to Detelich. Many of these patients would also sign blank treatment cards to facilitate AMH's billing for services not rendered. AMH and Detelich would frequently reimburse the hit list patients some percentage of this payment, a process known as "fee-splitting."

Detelich offered evidence that during 1999 and 2000 he instituted operational reforms at AMH. Detelich required ethics training for all employees and retained a coding consultant to establish a billing program and an attorney to establish a written compliance program. Detelich moved to California in 2000, leaving Dr. Donald Proper in charge of day-to-day operations at AMH.

Employees at AMH continued to bill hit list patients after Detelich moved to California. Hit list patients brought the cash from reimbursement checks to AMH instead of to Detelich personally. For in-

stance, on or after November 3, 2000, AMH submitted eighteen bills to Highmark for treatments not rendered to Dorothey Fender, the mother of an AMH employee. One Highmark check for $800.00 was sent to Ms. Fender via U.S. mail on November 7, 2000.[1] While Detelich remained in California, Dr. Proper wrote to Detelich informing him that the hit list billing was continuing, but Detelich took no additional action to stop the illegal billing practices.

In late 2000, the FBI began investigating billing irregularities at AMH. Still under investigation, AMH closed its doors in March, 2002. Shortly thereafter, Dr. Proper and his wife, Beverlee, in cooperation with the government investigation, recorded a conversation they had with Detelich on April 17, 2002. In response to questions about the investigation, Detelich replied, "The best, safest place is to not know anything" and stated, "I'm not gonna know anything."

Detelich was indicted in November, 2005. Following a trial, Detelich was convicted of health care fraud and mail fraud on March 2, 2007. He was subsequently sentenced to three years in prison and two years of supervised release and ordered to pay restitution to Highmark. This timely appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review evidentiary rulings made by the District Court for abuse of discretion. *United States v. Kemp,* 500 F.3d 257, 295 (3d Cir.2007). In reviewing whether a rational jury could have found elements of an offense beyond a reasonable doubt,

we apply the same standard as the District Court, and, viewing the evidence in the light most favorable to the Government, will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Jones,* 566 F.3d 353, 361 (3d Cir.2009). We exercise plenary review over the District Court's ruling on dismissal of an indictment, accepting the District Court's factual findings unless they are clearly erroneous. *United States v. Nolan–Cooper,* 155 F.3d 221, 229 (3d Cir.1998). Finally, we exercise plenary review in determining whether the District Court's jury instructions misstated applicable law or improperly shifted the burden of proof. *United States v. Zehrbach,* 47 F.3d 1252, 1260 (3d Cir.1995); *United States v. Korey,* 472 F.3d 89, 93 (3d Cir. 2007). If there is no misstatement or improper shifting, then we review the instructions themselves for abuse of discretion. *United States v. Hoffecker,* 530 F.3d 137, 173–74 (3d Cir.2008).

## III.

Detelich appeals his conviction arguing that the jury was improperly instructed on the issue of withdrawal, that there was insufficient evidence to establish beyond a reasonable doubt that he did not withdraw before November 3, 2000, that he was prejudiced by a duplicitous indictment, and that testimonial hearsay was admitted in violation of the Confrontation Clause. We will consider each argument in turn.

### A.

### 1.

Detelich argues that the District Court misstated the law by instructing the jury

---

1. The dates of these transactions are important because they occur within the five-year statute of limitations for health care and mail fraud. 18 U.S.C. § 3282(a). Detelich was not prosecuted for conduct prior to November 3, 2000.

that he was required to come forward with evidence that he completely withdrew from the fraudulent scheme, which he alleges misstates the law and improperly shifts the burden of proof from the government to Detelich.

The District Court instructed the jury that they must find that Detelich "completely withdrew from the scheme. A partial or temporary withdrawal is not sufficient." (App.1112–13.) The Court continued, "If you find that the defendant produced evidence that he withdrew from this scheme before November 3, 2000, the government cannot rest on its proof that he participated at one time in the illegal scheme. In that circumstance, the government has the burden to prove beyond reasonable doubt that the defendant was participating in the scheme on or after November 3, 2000." (App.1113–14.)

■ Detelich's argument has two parts, neither of which are availing. First, Detelich argues that the District Court's instruction that Detelich must have "completely withdr[awn] from the scheme" was an incorrect statement of the law of this Circuit. It is not. We have repeatedly held that a defendant's withdrawal from an illegal scheme must be "complete." *See United States v. Continental Group, Inc.,* 603 F.2d 444 (3d Cir.1979) (evidence must show defendant "in good faith disavowed and completely withdrew" from the conspiracy); *United States v. U.S. Gypsum Co.,* 550 F.2d 115, 130 (3d Cir.1977) (withdrawal requires "some definite, decisive step, indicating a complete disassociation from the unlawful enterprise"); *United States v. Chester,* 407 F.2d 53, 55 (3d Cir. 1969) (defendant must make a "full, decisive, and complete" withdrawal from an illegal conspiracy).

Our opinion in *United States v. Steele,* 685 F.2d 793, 803 (3d Cir.1982), relied on by Detelich, is not to the contrary. In *Steele,* we held that evidence of withdrawal involved "typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals." *Id.* at 803–04. Rather than modify the long-established rule that a defendant must provide evidence of complete withdrawal, *Steele* merely provides a non-exhaustive list of affirmative acts that we will typically find meet that burden. The crucial inquiry is whether the defendant has engaged in "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators." *United States v. Antar,* 53 F.3d 568, 582 (3d Cir.1995). Any such act is evidence of complete withdrawal, and the defendant's prima facie burden is thereby met.

■ Second, Detelich argues that the jury instruction improperly shifted the burden of proof from the government to the defendant. The plain language of the instruction belies this contention. The District Court clearly instructed the jury that Detelich only had to offer evidence of his complete withdrawal, not prove that he actually withdrew. The instructions left no doubt that if such evidence was presented, the government had the burden of proving beyond a reasonable doubt that Detelich had not withdrawn prior to November 3, 2000.

We therefore hold that the District Court did not misstate the law or improperly shift the burden of proof to Detelich on the issue of withdrawal.

2.

■ We also believe that there was sufficient evidence for a jury to find that Detelich participated in the scheme after November 3, 2000, thereby placing illegal conduct within the statute of limitations.

This Court applies "a deferential standard in determining whether a jury's verdict rests on sufficient evidence." *United States v. Ozcelik,* 527 F.3d 88, 93 (3d Cir. 2008). Viewing the evidence in the light most favorable to the government, we will sustain a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Voigt,* 89 F.3d 1050, 1080 (3d Cir.1996) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). An appellant raising a claim of insufficiency of the evidence bears a "very heavy burden." *United States v. Dent,* 149 F.3d 180, 187 (3d Cir.1998) (internal quotations omitted).

A reasonable jury could have found that Detelich did not make a prima facie case of withdrawal by presenting evidence that he moved to California and instituted ethics training at AMH. A geographic relocation, by itself, does not necessarily imply complete disassociation with a criminal enterprise, particularly when Detelich did not tell any of his co-conspirators that he wished to stop AMH's fraudulent billing practices and continued to reap financial benefits from the illegal scheme. A reasonable jury could perceive Detelich's move to California and implementation of ethics reforms at AMH as merely an effort to deflect blame, not to withdraw from the scheme.

Moreover, even if Detelich established a prima facie case of withdrawal, we believe that a reasonable jury could have found that the government satisfied its burden of rebutting that evidence. The government presented evidence that Detelich retained influence over AMH while residing in California through his continued ownership of the practice, that he profited from the fraudulent billings as the owner of AMH, and that he knew about the ongoing improper billing practices and did nothing to stop them. A reasonable jury, presented with such evidence, could easily find that the government met its burden of proving beyond a reasonable doubt that Detelich did not withdraw from the scheme prior to November 3, 2000, even in the face of a prima facie case of withdrawal.

We therefore hold that there was sufficient evidence for a jury to find beyond a reasonable doubt that Detelich did not withdraw from the scheme prior to November 3, 2000.

### B.

■ Next, Detelich argues that the District Court erred in failing to strike the indictment as duplicitous. Duplicitous indictments may be stricken because of the risk that they will lead to guilty verdicts where twelve jurors believe a defendant is guilty but "who were not unanimous in their assessment of which act supported the verdict." *United States v. Beros,* 833 F.2d 455, 462 (3d Cir.1987). However, a duplicitous indictment only requires reversal when its defects "conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing." *United States v. Haddy,* 134 F.3d 542, 548 (3d Cir.1998). Because Detelich has failed to demonstrate that any alleged error in the indictment was prejudicial, we need not decide whether the indictment was duplicitous.

Detelich contends that he is prejudiced by the inclusion in Count 1 of the indictment of a variety of alleged conduct in support of the scheme to defraud Highmark—specifically the references to fee-splitting and upcoding. The District Court ruled at the end of the Government's case-in-chief that the Government had failed to produce enough evidence of upcoding within the limitations period and that fee-splitting was not itself criminal conduct absent

proof of an underlying fraud. Thus, Detelich argues that evidence introduced in support of the later-excluded fee-splitting and upcoding theories of the scheme to defraud necessarily spilled over into the jury's guilty verdict for billing Highmark for services not rendered.

We disagree. Without deciding whether the additional theories could have been prejudicial, we believe that any alleged prejudice to Detelich would have been cured by the District Court's instructions to the jury, which clearly limited Count 1 to a scheme to defraud Highmark by submitting fraudulent claims for services not rendered. See United States v. Pungitore, 910 F.2d 1084, 1136 (3d Cir.1990) (holding jury instructions cured a duplicitous indictment where they "sufficiently informed the jury of its obligation to deliver a unanimous verdict as to a particular theory"). The jury was instructed:

> The defendant is charged with a scheme to defraud a healthcare benefit program, that is, Highmark, under Count 1 of the indictment. The government alleges that the scheme involved the fraudulent submission of claims to Highmark for services which were not rendered. You must unanimously agree that the government has proved beyond a reasonable doubt an execution or attempted execution of the alleged scheme before returning a verdict of guilty as to Count 1. If you cannot unanimously agree as to which execution or attempted execution the defendant committed or participated in furthering the scheme, then you must return a verdict of not guilty with respect to Count 1.

(App.1103.) The jury was also instructed that it could not convict on the basis of evidence of upcoding (App.1114), that fee-splitting was not independently criminal conduct (App.1100), and that Count 2 for mail fraud required the jury to first find "that the government [had] prove[d] be-yond a reasonable doubt the existence of a scheme to defraud." (App.1105.)

We presume that juries understand and carefully follow instructions. Pungitore, 910 F.2d at 1136 (citing Francis v. Franklin, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)). The instructions as given by the District Court clearly required the jury to unanimously agree that Detelich had engaged in or attempted to engage in a single execution of a scheme to defraud Highmark by submitting a fraudulent bill for services not rendered. The District Court thus guarded against the principle evil of a duplicitous indictment— the risk of a non-unanimous verdict. We will not assume that, because the jury was presented with evidence of other conduct in support of separate alleged executions of the scheme, it was incapable of compartmentalizing that information and finding Detelich guilty of a single execution as directed. See United States v. Urban, 404 F.3d 754, 776 (3d Cir.2005) (holding in multiple defendant context that a jury is "fully capable of compartmentalizing" evidence).

We therefore hold that, even if the indictment were duplicitous, the defendant was not prejudiced by any alleged duplicity, and we will affirm the District Court's refusal to strike the indictment.

### C.

Finally, Detelich claims that the District Court erred in two ways by admitting the recorded conversation between himself, Dr. Proper, and Beverlee Proper from April, 2002. First, Detelich argues that Mrs. Proper's death in 2006 renders the admission of her statements a violation of his confrontation rights under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Second, Detelich argues that the conversation should have been excluded as irrelevant. We disagree on both points.

Detelich's Confrontation Clause objection is resolved by our holding in *United States v. Hendricks*, 395 F.3d 173 (3d Cir.2005). In *Hendricks* we rejected the argument that statements made by an unavailable confidential informant and admitted via recording violated the Confrontation Clause. First, we held that where the statements were not introduced for the truth of the matter asserted, the admission presented no hearsay concerns under Fed. R.Evid. 801(a) and *Crawford*. *Id.* at 183. Second, we held that "the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context." *Id.* at 184.

Both reasons permit the admission of Mrs. Proper's recorded statements. Mrs. Proper's statement was admitted to place Detelich's statement in context, and not for its truth.[2] Further, Detelich's statements, unquestionably admissible as party admissions, were responses to a conversation and are therefore meaningless without the context of Mrs. Proper's statements. Thus, Mrs. Proper's statements are admissible for the reasons articulated in *Hendricks*.

Next, Detelich argues that the District Court abused its discretion in finding the recorded conversation relevant under Fed.R.Evid. 401. The District Court found that the recording was relevant to rebut Detelich's claim that he withdrew from the fraudulent scheme when he moved to California. District Courts have great discretion to admit evidence under the broad definition of relevant evidence in Rule 401. *See Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532, 544–45 (3d Cir.2007). The rule itself states that any evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. Fed. R.Evid. 401.

We agree that Detelich's conversation with the Propers made it less likely that Detelich had withdrawn from the conspiracy to the extent it demonstrated an ongoing effort to conceal illegal activities. In addition, the conversation aided the government in impeaching Detelich's contention that he was unaware of the illegal billing practices. Thus we cannot say that the District Court abused its considerable discretion in finding that the recording made it less likely that Detelich had withdrawn from the scheme.[3]

Because Beverlee Proper's statement was relevant and was admissible under *Hendricks*, the District Court did not error in admitting it into evidence.

## IV.

For the foregoing reasons, we will affirm Detelich's conviction.

---

2. Detelich argues that the District Court erred in not giving a limiting instruction to ensure the jury did not consider Mrs. Proper's statement for its truth. However, we will not find plain error in the lack of a limiting instruction where the defendant did not request such an instruction at trial. *See United States v. Rickey*, 457 F.2d 1027, 1031 (3d Cir.1972). As Detelich did not seek a limiting instruction from the District Court, he is not entitled to claim error on this issue on appeal.

3. Detelich also argues in passing that the recording was unfairly prejudicial under Rule 403. No argument is made as to why admitting the recording was unfair and we therefore have no basis on which to consider whether the District Court abused its discretion on this point.