UNITED STATES, Appellee

v.

Mathew P. SCHEURER, Senior Airman
U.S. Air Force, Appellant

No. 04-0081

Crim. App. No. 34866

United States Court of Appeals for the Armed Forces

Argued October 7, 2004

Decided September 29, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON, BAKER, and ERDMANN, JJ., joined.  CRAWFORD, J., filed a
separate opinion concurring in part and dissenting in part.

Counsel

For Appellant:  Major Andrew S. Williams (argued); Lieutenant
Colonel Carlos L. McDade (on brief).

For Appellee:  Captain C. Taylor Smith (argued); Colonel LeEllen
Coacher, Lieutenant Colonel Robert V. Combs, and Major James K.
Floyd (on brief).

Military Judge:  David F. Brash

**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.[1]

This case presents four issues. The principal issue is whether the Sixth Amendment's Confrontation Clause barred the admission of statements Appellant's wife made in discussions with a co-worker that incriminated Appellant. Because these statements were not "testimonial," as that term is used in Crawford v. Washington,[2] the portions of these discussions that bore adequate indicia of reliability were admissible under the Sixth Amendment. We also reject Appellant's argument that the Air Force Court of Criminal Appeals misused evidence that the military judge admitted for a limited purpose. But our resolution of the two remaining issues entitles Appellant to relief. We must set aside the finding of guilty to one specification due to the evidence's legal insufficiency and another because the military judge's announcement of the finding was fatally ambiguous.

## Background

Appellant and his wife, both Air Force enlisted members, committed numerous drug offenses while assigned to Yokota Air

---

[1] We heard oral argument in this case at Harvard Law School as part of the Court's "Project Outreach." See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.
[2] 541 U.S. 36 (2004).

Base in Japan.  As the Air Force Court of Criminal Appeals explained, Appellant "and his wife used a variety of drugs on almost a daily basis, both together and separately.  Sometimes they used drugs alone as a couple."[3]  Sometimes Appellant and his wife used drugs with other individuals, including an American high school student, NK.  Appellant and his wife also purchased drugs and supplied them to others, including the high school student, "although they did this more as social facilitators than as dealers."[4]

The Government's case included the testimony of Senior Airman (SrA) Sherry Sullivan, who was assigned to the same duty station as Airman (Amn) Anne Scheurer, Appellant's wife.  "Over a period of about eight months beginning in January 2000, while working at her duty station, the appellant's wife told [SrA Sullivan] about the drug use, including the participation of the minor," NK.[5]  SrA Sullivan "had an amiable on-the-job relationship with the appellant's wife," but "was not a close friend."[6]  Typically, Appellant's wife "initiated the

---

[3] United States v. Scheurer, No. ACM 34866, 2003 CCA LEXIS 195, at *2-*3, 2003 WL 22047899, at *1 (A.F. Ct. Crim. App. Aug. 25, 2003)(unpublished).
[4] Id. at *3, 2003 WL 22047899, at *1.
[5] Id., 2003 WL 22047899, at *1.  While NK was a minor at the time of the offenses, he was eighteen years old when he testified at Appellant's Article 32, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 852 (2000), investigation.
[6] Id., 2003 WL 22047899, at *1.

conversations about drug activity."[7]  She usually described drug use she committed with her husband.  But in a few instances, she described "incidents where either she or her husband acted alone while using drugs."[8]  Appellant's wife told SrA Sullivan "how she and her husband would use body cleansing soaps and shampoos to purge their systems of drugs."[9]  Appellant's wife also revealed her belief that "the Air Force Office of Special Investigations (AFOSI) was 'watching them' and looking to 'get' both" Amn Scheurer and Appellant "for distributing drugs to a minor."[10]

SrA Sullivan "eventually contacted the AFOSI and agreed to wear a 'wire' to facilitate recording of the wife's statements. Two of the conversations between Appellant's wife and the co-worker in August 2000 were preserved in this manner.  The conversations ceased shortly thereafter."[11]

The defense moved in limine to exclude from evidence all of Appellant's wife's statements to SrA Sullivan.  During a motions hearing, the Government called Amn Scheurer as a witness, but she invoked the spousal incapacity rule and refused to testify against her husband.  SrA Sullivan testified and described her conversations with Amn Scheurer.

---

[7] Id., 2003 WL 22047899, at *1.
[8] Id.
[9] Id. at *3-*4, 2003 WL 22047899, at *1.
[10] Id. at *4, 2003 WL 22047899, at *1.
[11] Id., 2003 WL 22047899, at *1

4

The military judge denied the defense motion to exclude the statements, making "detailed findings of fact" and "extensive conclusions of law."[12]

His conclusions included the following relevant rulings:

(1) The appellant's wife, as the declarant, was unavailable as a witness; (2) Admissibility under Mil. R. Evid. 804(b)(3) requires that the statement tends to subject the declarant to criminal liability to the extent that a reasonable person in the position of the declarant would not have made the statement unless she believed it to be true; (3) The statements were against her interest in that the wife was well aware of her criminal liability when making the statements; (4) Under a line-by-line analysis, each implication of the appellant by the wife carried with it an attendant description of her own involvement and there was no attempt to shift blame away from the declarant toward the appellant -- thus the statements were truly self-inculpatory; (5) There was no animosity toward the appellant on the part of the wife; and (6) The presumption of unreliability that attaches to statements like the wife's was overcome by the particular facts of the case.[13]

The military judge also considered the statements' admissibility under Military Rules of Evidence (M.R.E.) 401 and 403. He ruled that evidence of Amn Scheurer's statements to SrA Sullivan was relevant. He also ruled that the statements passed the M.R.E. 403 balancing test, relying in part on the following curative instruction that he planned to deliver:[14]

---

[12] Id. at *5, 2003 WL 22047899, at *1.

[13] Id. at *5-*6, 2003 WL 22047899, at *1.

[14] The Appellant elected to be tried by military judge alone after the judge initially ruled that these statements were admissible. Because the case was tried before the military judge alone, the military judge never gave the proposed curative instruction.

> [Y]ou may consider evidence that Airman Anne Scheurer alone was involved in drug activity for the limited purpose of its tendency, if any, to first demonstrate the accused had the opportunity to engage in similar activity; demonstrate that the accused had access to the various drugs described by his wife; demonstrate Anne Scheurer's familiarity with the specifics of drug activity; and consider such background in assessing the credibility of her descriptions of the accused's alleged activity.  You may not consider this evidence [for] any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged, simply because of his association with his wife.

The military judge also denied a later defense request that he reconsider his ruling on the admissibility of the statements.

At his court-martial, Appellant was charged with three specifications of violating Article 112a, UCMJ,[15] by distributing controlled substances (ecstasy, methamphetamine, and LSD) on divers occasions, five specifications of violating Article 112a by wrongfully using controlled substances (ecstasy, two specifications of methamphetamine, LSD, and cocaine), one specification of violating Article 112a by introducing methamphetamine onto Yokota Air Base, one specification of violating Article 111, UCMJ,[16] by physically controlling a passenger car while impaired by controlled substances on divers occasions, and one specification of violating Article 134, UCMJ,[17] by wrongfully soliciting another individual to use

---

[15] 10 U.S.C. § 912a (2000).
[16] 10 U.S.C. § 911 (2000).
[17] 10 U.S.C. § 944 (2000).

methamphetamine.  Appellant pleaded guilty to the two specifications alleging use of methamphetamine but not guilty to the other offenses.  The military judge found Appellant not guilty of the cocaine use and LSD distribution offenses, but guilty of all other charges and specifications.  In his findings, the military judge excepted some language from four of the specifications, three of which we will address below.

The military judge sentenced Appellant to confinement for three years, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.  The convening authority approved the sentence as adjudged.  In an unpublished opinion, the Air Force Court affirmed the findings and sentence.[18]  We then granted Appellant's petition to review his case.[19]

---

[18] Scheurer, 2003 CCA LEXIS 195, 2003 WL 22047899.

[19] United States v. Scheurer, 60 M.J. 117 (C.A.A.F. 2004).  We granted review of the following issues:

> I.  Whether the Air Force Court of Criminal Appeals improperly conducted its appellate review under Article 66(c), UCMJ, by considering evidence outside the record in violation of United States v. Holt, 58 M.J. 227 (C.A.A.F. 2003).
>
> II.  Whether the military judge improperly deprived Appellant of his Sixth Amendment right to confrontation by admitting an accomplice's statements without requiring that all references to Appellant be redacted.
>
> III.  Whether the evidence is legally insufficient to sustain Appellant's conviction under Article 111, UCMJ, where the prosecution did not present evidence that Appellant physically controlled a vehicle while impaired.

### Confrontation and Statements to a Co-Worker

We first consider whether the military judge violated the Confrontation Clause by admitting evidence of the statements Appellant's wife made in conversations with her co-worker, SrA Sullivan. To answer this question, we examine the Supreme Court's landmark Confrontation Clause decision of Crawford v. Washington.[20]

Like this case, Crawford involved the admissibility of incriminating statements made by the defendant's wife. Also like in this case, Crawford's wife did not testify based on a spousal privilege.[21] This presented the issue of whether the

---

IV.  Whether, in light of United States v. Walters, 58 M.J. 391 (C.A.A.F. 2003), the findings of guilty to specifications 3 and 5 of the original Charge and Additional Charge I and its supporting specification may be affirmed on appeal where the fact finder excepted the phrase "on divers occasions" and substituted nothing in its place.

[20] 541 U.S. 36 (2004).

[21] Id. at 40.  The spousal privilege rules at issue in Crawford and this case are different.  The rule in Washington apparently allowed the defendant to invoke spousal privilege to keep his wife from testifying.  See id.  In the military, on the other hand, spousal incapacity allows the witness spouse, not the accused, to decide whether to testify.  See M.R.E. 504(a).  So the case for finding unavailability seems even greater under the Military Rules of Evidence than under the Washington state statute that rendered Crawford's wife "unavailable."  Holding that Appellant's wife was unavailable in this case is inconsistent with our ruling in United States v. Hughes, 28 M.J. 391 (C.M.A. 1989), where we treated a spouse who invoked spousal incapacity as available for confrontation purposes.  In Hughes, we reasoned that the spouse "was at all times available to appellant for examination as to her out-of-court statements." Id. at 395.  She declined to testify "out of a desire to protect

Confrontation Clause permitted the court to consider the wife's pretrial statements implicating her husband. Where this case differs markedly from Crawford is the context within which the pretrial statements were made. In Crawford, the statements at issue consisted of a tape recording of police officers questioning the defendant's wife. In this case, the statements at issue consisted of conversations between Appellant's wife and a co-worker during which Appellant's wife implicated both her husband and herself in ongoing drug offenses.

Crawford held that the Confrontation Clause forbids the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[22] As the Third Circuit has explained, "The lynchpin of the Crawford decision . . . is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in Crawford applies only to the former category of statements."[23]

---

the integrity of her marriage, but it could scarcely have threatened the marriage for appellant himself to call his wife as a witness to explain, if she could, her earlier statements." Id. Hughes's approach to the confrontation implications of spousal incapacity is inconsistent with the Supreme Court's opinion in Crawford, as well as other federal precedent. See, e.g., United States v. Chapman, 866 F.2d 1326, 1330 (11th Cir. 1989); United States v. Barlow, 693 F.2d 954, 964 (6th Cir. 1982). We hereby overrule Hughes to the extent that it holds a spouse who invoked spousal incapacity remains available for confrontation purposes.

[22] 541 U.S. at 53-54.

[23] United States v. Hendricks, 395 F.3d 173, 179 (3d Cir. 2005).

So "unless a particular hearsay statement qualifies as 'testimonial,' Crawford is inapplicable. . . ."[24]

The Third Circuit also observed that despite "the centrality of the term to its decision, the Crawford Court expressly declined to provide a comprehensive definition of 'testimonial statements.'"[25] Referring to statements "made to private individuals not associated with the government with no expectation of being conveyed to the police, the prosecution, or other officials," one commentator observed that "statements made to family, friends, and acquaintances without an intention for use at trial have consistently been held not to be testimonial, even if highly incriminating to another."[26] We agree that in this case the "declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of Crawford."[27]

The Third Circuit offered the following rationale for its view that  statements unwittingly made to government informants

---

[24] Id.

[25] Id.

[26] Robert P. Mosteller, Crawford v. Washington:  Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511, 540 (2005).

[27] United States v. Saget, 377 F.3d 223, 229 (2d Cir. 2004). Accord Hendricks, 395 F.3d at 181 (citing, among other cases, Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004) (finding "statements . . . made during a private conversation" nontestimonial); United States v. Robinson, 367 F.3d 278, 292 n.20 (5th Cir. 2004) ("The statement challenged as hearsay was made during the course of the conspiracy and is non-testimonial

are nontestimonial. First, such statements "neither fall within nor are analogous to any of the specific examples of testimonial statements mentioned by" Crawford.[28] Second, such conversations "do not qualify as 'testimonial' under any" of the definitions suggested by Crawford. "They are not 'ex parte in-court testimony or its functional equivalent,' nor are they 'extrajudicial statements . . . contained in formalized . . . materials, such as affidavits, depositions, prior testimony, or confessions.'"[29] Finally, "[e]ach of the examples referred to by [Crawford] or the definitions it considered entails a formality to the statement absent from" statements made in conversation with an informant.[30] Statements "cannot be deemed testimonial" if the declarants "did not make the statements thinking that they would be available for use at a later trial."[31]

In reaching a similar conclusion, the Second Circuit reasoned that Crawford offers the Supreme Court's opinion in Bourjaily v. United States,[32] "which involved a co-defendant's

---

in nature."); United States v. Reyes, 362 F.3d 536, 541 n.4 (8th Cir. 2004) ("Co-conspirator statements are nontestimonial.")).
[28] Hendricks, 395 F.3d at 181 (citing Crawford, 541 U.S. at 68 and noting that the Supreme Court listed "'prior testimony [given] at a preliminary hearing, before a grand jury, or at a former trial[,] and to police interrogations' as examples of obviously testimonial statements").
[29] Id. (alternations in original) (quoting Crawford, 541 U.S. at 51-52).
[30] Id.
[31] Id. (quoting Crawford, 541 U.S. at 52)(citation and quotation marks omitted).
[32] 483 U.S. 171 (1987).

11

unwitting statements to an FBI informant, as an example of a case in which nontestimonial statements were correctly admitted against the defendant without a prior opportunity for cross-examination."[33]

In Crawford, the Supreme Court stated, "Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse -- a fact borne out time and again throughout a history with which the Framers were keenly familiar."[34] Crawford explains that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."[35] The communications at issue in this case fall within the latter category. The casual remarks in the present case stands in stark contrast to the "recorded statement, knowingly given in response to [the] structured police questioning"[36] at issue in Crawford.

Our conclusion that the casual remarks at issue in the present case were not testimonial leaves open the question, not necessary for the decision in this case, as to whether Government involvement in the formulation of the inquiries made on behalf of the Government can establish the testimonial nature

---

[33] Saget, 377 F.3d at 229 (citing Crawford, 541 U.S. at 58).
[34] Crawford, 541 U.S. at 56 n. 7.
[35] Id. at 51.
[36] Id. at 53 n.4.

of the conversation.[37]  For purposes of the Confrontation Clause,
there may be a substantial difference -- with regard to cross-
examining of a hearsay declarant -- between a hearsay
declarant's casual remarks and the declarant's response to
questions structured by the Government.  In the present case,
the distinction is not applicable because the military judge
found that the Government's role in obtaining the statements
amounted only to facilitation, not direction or suggestion.

Crawford's requirement to exclude testimonial hearsay
offered without an opportunity to cross-examine the declarant
does not apply to Amn Scheurer's statements to SrA Sullivan.  So
what confrontation test does apply?  We agree with the
conclusion of every published appellate court decision that has
considered this issue since Crawford:  the Ohio v. Roberts[38]
requirement for particularized guarantees of trustworthiness
continues to govern confrontation analysis for nontestimonial
statements.

The Fifth Circuit's analysis of this question is typical of
post-Crawford appellate decisions.  That court concluded that
for nontestimonial statements, "Crawford leaves in place the
Roberts approach" for determining the statement's admissibility

---

[37]  See Hammon v. State, 829 N.E.2d 444 (Ind. 2005); see also
People v. Wahlert, 31 Cal. Rptr. 3d 603, modified by People v.
Wahlert, EO35174, 2005 Cal. App. LEXIS 1108 (Cal. Ct. App., July
19, 2005) (focusing on extent of government involvement in
formulation of dialogue during pretext phone calls).

under the Confrontation Clause.[39]  The Fifth Circuit acknowledged

that Crawford raises the possibility that nontestimonial

statements are "exempted . . . from Confrontation Clause

scrutiny altogether."[40]  But because the Supreme Court declined

to overrule White v. Illinois,[41] which rejected the proposition

that the Confrontation Clause placed no restrictions on the

admissibility of nontestimonial statements, "Roberts remains

controlling for purposes of nontestimonial statements."[42]  The

Wisconsin Supreme Court recently noted that its research

revealed "only one reported case, a [New York state] trial court

decision," that had "construed Crawford as exempting

---

[38]  448 U.S. 56 (1980).
[39]  United States v. Holmes, 406 F.3d 337, 347 (5th Cir. 2005).
[40]  Id. at 348 n.14 (quoting Crawford, 541 U.S. at 68).
[41]  502 U.S. 346 (1992).
[42]  Holmes, 406 F.3d at 347 n.14 (citing Crawford, 541 U.S. at 61).  Accord Hendricks, 395 F.3d at 179 n.7 (noting that removing nontestimonial statements from Confrontation Clause scrutiny "is beyond the province of this court"); Saget, 377 F.3d at 227 ("Crawford leaves the Roberts approach untouched with respect to nontestimonial statements.  The Crawford Court expressly declined to overrule White . . . ."); Horton, 370 F.3d at 84 ("unless . . . statements qualify as 'testimonial,' Crawford is inapplicable and Roberts continues to apply"); State v. Martin, 695 N.W.2d 578, 584 (Minn. 2005) (holding that Crawford "announced a new test for the admissibility of those statements that are 'testimonial' but left the Roberts test in place for nontestimonial statements"); State v. Rivera, 844 A.2d 191, 202 (Conn. 2004) ("because this statement was nontestimonial in nature, application of the Roberts test remains appropriate"); State v. Dedman, 102 P.3d 628, 636 (N.M. 2004) ("the federal Confrontation Clause still requires the application of the Roberts test to non-testimonial hearsay evidence, Crawford notwithstanding"); Miller v. State, 98 P.3d 738, 744 (Okla. Ct. Crim. App. 2004) ("we continue to apply [the Roberts] test to nontestimonial hearsay").

nontestimonial hearsay from Confrontation Clause analysis altogether."[43]  And that decision, the Wisconsin Supreme Court observed, "seemed to rest on a misquotation of Crawford."[44]

We will evaluate Amn Scheurer's statements to SrA Sullivan under the Roberts test.  Ohio v. Roberts provides that where the declarant is unavailable to be cross-examined, the Confrontation Clause permits the admission of a hearsay statement in a criminal trial only if:  (1) the statement "falls within a firmly rooted hearsay exception," or (2) it bears other "particularized guarantees of trustworthiness."[45]

In Lilly v. Virginia,[46] a four-Justice plurality indicated that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence."[47]  Rather, such statements are "presumptively unreliable."[48]  Accordingly, we will scrutinize such statements to determine whether they bear sufficient particularized guarantees of trustworthiness to overcome this presumption of unreliability.

---

[43] State v. Manuel, 697 N.W.2d 811, 826 n.15 (Wisc. 2005) (citing People v. Conyers, 777 N.Y.S.2d 274, 276 (N.Y. Sup. Ct. 2004)).
[44] Id.
[45] 448 U.S. 56, 66 (1980).
[46] 527 U.S. 116 (1999) (plurality opinion).
[47] Id. at 134.
[48] Id. at 131 (quoting Lee v. Illinois, 476 U.S. 530, 541 (1986)).

Amn Scheurer's statements to SrA Sullivan can be divided into three groups:  (1) three statements that incriminated herself only; (2) approximately thirteen statements that incriminated both herself and her husband; and (3) four statements that incriminated her husband only.  The lower court held, and we agree, that the statements in the third category were not relevant to any of the offenses of which Appellant was convicted.[49]  So we need not determine whether they were properly admitted into evidence.  Rather, our focus is on the statements in which Amn Scheurer incriminated both her husband and herself. If those statements survive Confrontation Clause scrutiny -- as we conclude they do -- then a fortiori Amn Scheurer's three purely self-incriminatory statements that the military judge admitted for a limited purpose did not offend the Confrontation Clause.

In determining whether hearsay statements by unavailable declarants bear adequate indicia of reliability, the Lilly plurality emphasized that appellate courts "should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the [Confrontation] Clause."[50]  Our independent assessment of the evidence in this case leads to the same conclusion as the military judge's:  Amn

---

[49] Scheurer, 2003 CCA LEXIS 195, at *14-*16, 2003 WL 22047899, at *5.
[50] 527 U.S. at 137.

Scheurer's statements to SrA Sullivan that jointly implicated her husband and herself bore sufficient particularized guarantees of trustworthiness to overcome the presumption of unreliability.

We agree with the military judge that Amn Scheurer's statements were truly self-incriminatory and that a reasonable declarant in her position would not have made the statements unless she believed them to be true. As the military judge observed, she made her statements "to a fellow military member on an almost daily basis, over an eight-month period," revealing "a spectrum of drug activity deep in both frequency and breadth." Amn Scheurer's statements revealed "[c]hronic use and frequent distribution." They also demonstrated her consciousness of the possibility of prosecution "as fear of OSI [Office of Special Investigations] investigation crept into the conversations." Additionally, we note that the statements' potential to subject Amn Scheurer to criminal penalties was far from hypothetical. Four days after Appellant's court-martial concluded, his wife was tried and convicted of multiple drug offenses and received a sentence that included thirty months of confinement and a bad-conduct discharge.[51] The danger created by Appellant's wife's statements was further demonstrated by SrA

---

[51] United States v. Scheurer, No. ACM 34865, 2003 CCA LEXIS 115, 2003 WL 21004683 (A.F. Ct. Crim. App. Apr. 10, 2003), petition denied, 59 M.J. 57 (C.A.A.F. 2003).

Sullivan's decision to reveal her admissions to law enforcement authorities and to wear a hidden microphone to record their conversations.  No one in Amn Scheurer's position would likely make such admissions unless they were actually true.  As the Supreme Court has observed, "reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true."[52]

The military judge also noted that "there was no government involvement in securing the statements until the wire device was used by OSI in August.  Thus, there was no government activity afoot for the first seven months."  Additionally, "it appears the conversations were initiated by the declarant rather than Sullivan.  Thus, even when the wires were used, this amounted to facilitation only on the part of the government, rather than direction or suggestion."

The military judge also found that there was "no evidence of animosity toward the accused on the part of the declarant."

Finally, and critically, Amn Scheurer's statements were not made in an attempt to shift blame from herself to her husband or in an effort to seek leniency or favorable treatment from law enforcement officials.  Rather, as the military judge found, her statements were "truly self-inculpatory."

---

[52] Williamson v. United States, 512 U.S. 594, 599 (1994).

Accordingly, on the basis of our independent review of the evidence, we conclude that Amn Scheurer's statements to SrA Sullivan bore particularized guarantees of trustworthiness that warrant their admissibility despite the general presumption of unreliability that attaches to a declarant's statement implicating an accomplice.  The military judge did not err when he admitted them into evidence.

### The Air Force Court's Use of Evidence Admitted for a Limited Purpose

Appellant also argues that the Air Force Court misused Amn Scheurer's statements to SrA Sullivan that the military judge admitted for a limited purpose.  We disagree.

In United States v. Holt,[53] the military judge admitted certain sentencing exhibits into evidence and ruled that the members could not consider them for the truth of the matter they asserted.  Nevertheless, in reviewing the case, the Air Force Court of Criminal Appeals considered the exhibits as substantive evidence.  We held that a court of criminal appeals "may not resurrect excluded evidence" or consider evidence in a manner inconsistent with the limited purpose for which the military judge admitted it.[54]  In this case, Appellant argues that the Air Force Court violated this rule in its use of Amn Scheurer's

---

[53] 58 M.J. 227 (C.A.A.F. 2003).
[54] Id. at 232-33.

19

statements. That contention, however, is based on a misreading of the record.

Appellant's argument assumes that the military judge's limitation on the use of Amn Scheurer's statements[55] applied to <u>all</u> of the statements that she made. But that is not true. The limiting instruction that the military judge planned to give if this had been a members trial (which clearly served as his announcement of the limited purpose for which he admitted the evidence) applied only to the three statements in which Amn Scheurer incriminated herself and not her husband. The limitation clearly did not apply to the approximately thirteen statements that incriminated both of them or the four statements that incriminated her husband only. The instruction began by referring to "evidence that Airman Anne Scheurer alone was involved in drug activity." The ruling's distinction between the three statements in which she implicated only herself and those statements that also implicated her husband came into even sharper focus when the limiting instruction stated that her statements could be considered "in assessing the credibility of her descriptions of the accused's alleged activity." This makes clear that the limiting instruction did not apply to Amn Scheurer's statements that described Appellant's alleged drug

---

[55] <u>See</u> <u>supra</u> pp. 5-6.

use.  Rather, the military judge admitted those statements into evidence without limitation.

The Air Force Court's opinion in this case contains no hint that the court used the evidence of Amn Scheurer's three statements implicating only herself inconsistently with the limiting instruction.  "[T]he mature and experienced judges who serve on the Courts of Criminal Appeals are presumed to know and apply the law correctly . . . ."[56]  In the absence of any indication to the contrary, we will presume that the Air Force Court considered Amn Scheurer's three statements that were solely self-incriminating only for the purposes permitted by the limiting instruction.

### Physically Controlling a Vehicle While Impaired

We also granted review to consider whether the evidence is legally sufficient to uphold Appellant's conviction for controlling a vehicle under the influence of LSD.  "Our standard of review on a question of legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the Government, a reasonable factfinder could find each element of the offense beyond a reasonable doubt."[57]  In this case, the evidence would not permit a reasonable factfinder to conclude

---

[56] United States v. Washington, 57 M.J. 394, 399 (C.A.A.F. 2002).
[57] See United States v. Wright, 42 M.J. 163, 166 (C.A.A.F. 1995) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

beyond a reasonable doubt that Appellant controlled a car while he was under the influence of LSD.

Drunk driving has long been a military offense.[58]  In 1986, Congress expanded Article 111 to prohibit operation of a vehicle while impaired by a controlled substance.[59]  In 1992, Congress "substantially revised" Article 111.[60]  Most significantly for the purposes of this case, Congress expanded Article 111 "to prohibit physically controlling, as well as operating, a vehicle, aircraft, or vessel."[61]  The 1992 "amendments to Article 111 were designed to bring the military's criminal justice system more closely in line with civilian criminal law."[62]

Courts have defined "physical control" of a vehicle broadly.  As the Army Court has observed, courts have held that this element is satisfied where the accused was:  (1) sitting behind and leaning against the steering wheel; (2) sitting in the driver's seat of a parked car with hands on the steering

---

[58] See generally R. Peter Masterton, The Military's Drunk Driving Statute:  Have We Gone Too Far?, 150 Mil. L. Rev. 353, 355 (1995) (noting that "[t]he military's prohibition on drunk driving originated with the 96th Article of War, the general article that proscribed disorders and neglects to the prejudice of good order and military discipline.").
[59] Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, tit. III, § 3055, 100 Stat. 3207-76 (1986) (codified at 10 U.S.C. § 911 (2000)).
[60] Masterton, supra note 58, at 356.  See generally National Defense Authorization Act for Fiscal Year 1993, Pub. L. No. 102-484, § 1066(a)(1), 106 Stat. 2506 (1992) (codified at 10 U.S.C. § 911 (2000)).
[61] Masterton, supra note 58, at 356.

wheel and the key in the ignition, but without the engine running; and (3) sitting behind the wheel with the key in the ignition.[63] The Army Court explains that the "statutes are designed to deter individuals who are intoxicated from getting into vehicles except as passengers."[64] So the revised Article 111 "is a preventive measure designed to deter unsafe drivers from taking the first step, that is, sitting behind the wheel of an instrument which, in their hands, can cause great injury and death."[65]

The Army Court's analysis makes clear that sitting in a passenger seat of a car while someone else drives does not result in "physical control" of the vehicle. On the contrary, the very purpose of the legislation is to remove impaired people from the driver's seat. So unless the Government proves beyond a reasonable doubt that Appellant was in the driver's seat, rather than the front passenger's seat, the Government has not established an Article 111 offense.

In this case, considering the evidence in the light most favorable to the Government, we conclude that a reasonable

---

[62] Id. (citing H. Conf. Rep. No. 102-966 (1992), reprinted in 1992 U.S.C.C.A.N. 1769, 1849).

[63] United States v. Barnes, 24 M.J. 534, 535 (A.C.M.R. 1987) (citing, among other authorities, James O. Pearson Jr., Annotation, What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance, 93 A.L.R. 3d 7 (1979)).

[64] Id.

[65] Id.

factfinder could not find beyond a reasonable doubt that Appellant was in the driver's seat of the car while he was under the effects of LSD.  The evidence concerning this specification comes entirely from NK's testimony at the Article 32 investigation, a redacted version of which became part of the Government's case on the merits.  NK testified that Appellant and his wife "said that they were going to go down to Roppongi and they asked me if I wanted to go with them.  So we got into the car and left."  He continued, "We went to Roppongi.  I was in the back seat and Matt and Anne were in the front.  That was normal."  That is the only information in the record concerning the three individuals' location in the car.  Even when considered in the light most favorable to the Government, this cannot support concluding beyond a reasonable doubt that Appellant was driving the car.  On the contrary, the testimony -- which the military judge read rather than hearing in person -- is equally consistent with Appellant's wife driving as with Appellant driving.

In arguing to the contrary, the Government mischaracterizes the evidence.  The Government acknowledges that the evidence on this charge is limited to the transcript of NK's testimony at the Article 32 investigation.  But the Government incorrectly argues that NK testified that during the car ride after Appellant ingested LSD, Appellant and his wife "were in their

'normal' places in the car." The Government then argues that it is "apparent the normal places were with Appellant driving, Amn Anne Scheurer in the passenger seat, and [NK] in the back." But NK did not testify that Appellant and his wife were in their "'normal' places." Rather, he stated only that Appellant and his wife "were in the front" of the car and "[t]hat was normal."

Without the additional characterization that the Government incorrectly attributes to NK, it is apparent that the evidence does not prove beyond a reasonable doubt that Appellant was in physical control of the car the night he ingested LSD. Accordingly, we must set aside the finding of guilty to the Additional Charge and its specification and dismiss them with prejudice.

## Excepting "Divers Occasions"

When the military judge announced his findings, he excepted the words "divers occasions" from three of the specifications that resulted in findings of guilty. One of those specifications was the driving under the influence allegation that we discussed above and set aside on legal insufficiency grounds. The other two specifications alleged drug use. Specification 3 of the original Charge alleged that Appellant used ecstasy "at or near Yokota Air Base, Japan, and Tokyo, Japan, on divers occasions between on or about 1 June 1999 and on or about 31 July 2000." Specification 5 of the original

25

Charge alleged that Appellant used LSD "at or near Tokyo, Japan, and Mt Fuji, Japan, on divers occasions between on or about 1 April 2000 and on or about 31 July 2000."

The military judge found Appellant guilty of specification 3 "excepting the words 'and Tokyo, Japan on divers occasions.'" He found Appellant guilty of specification 5 "excepting the words 'and Mt. Fuji[,] Japan on divers occasions.'" He found Appellant not guilty of the excepted words and substituted nothing in their place.

As we recently explained, when an accused is charged with committing "illegal conduct 'on divers occasions' and the [court-martial] find[s] the accused guilty of charged conduct but strikes out the 'on divers occasions' language, the effect of the findings is that the accused has been found guilty of misconduct on a single occasion and not guilty of the remaining occasions."[66] When this occurs, if "the findings do not disclose the single occasion on which the conviction is based, the Court of Criminal Appeals cannot conduct a factual sufficiency review or affirm the findings because it cannot determine which occasion the servicemember was convicted of and which occasion the servicemember was acquitted of."[67]

---

[66] United States v. Augspurger, 61 M.J. 189, 190 (C.A.A.F. 2005); see United States v. Walters, 58 M.J. 391 (C.A.A.F. 2003).
[67] Id.

The key issue when applying this precedent is whether the findings establish which of the charged divers occasions provided the basis for the conviction. In this case, the findings provide such certainty as to one of the specifications (specification 5), but not the other (specification 3).

Specification 3 of the original Charge alleged that Appellant "did, at or near Yokota Air Base, Japan, and Tokyo, Japan, on divers occasions between on or about 1 June 1999 and on or about 31 July 2000 wrongfully use 3,4-Methylenedioxymethamphetamine (MDMA) (Ecstasy), a Schedule I controlled substance." The Government called SrA Andrew Wuthrich as a witness. He testified that he had heard Appellant say he was "rolling," which he understood to mean that Appellant was under the effects of ecstasy. SrA Wuthrich's testimony did not indicate either when or where Appellant made that comment. SrA Wuthrich also testified that he saw Appellant under the apparent effects of ecstasy in a Tokyo nightclub and that he saw an ecstasy pill at Appellant's residence.

Airman Basic Tracy Svendsen testified about an occasion around March 2000 when Appellant appeared to be under the effects of ecstasy at a club in Tokyo. But he also testified that he never actually saw Appellant ingest ecstasy.

SrA Sullivan testified about her conversations with Appellant's wife concerning drug use. SrA Sullivan testified

27

that Appellant's wife told her that Appellant used "the pills." She also testified that Appellant's wife told her that Appellant used a "Buddha" pill at a party on Mount Fuji.

NK testified that he saw Appellant use ecstasy on two occasions. He testified[68] about an incident when he and Appellant both took ecstasy in a parking lot in Shinjuku. Additionally, NK testified that he once saw Appellant apparently under the effects of ecstasy at Appellant's residence.

The military judge ultimately found Appellant guilty of this specification "excepting the words 'and Tokyo, Japan on divers occasions.'" So the military judge found Appellant guilty of a single use of ecstasy between June 1, 1999 and July 31, 2000, at or near Yokota Air Base. Based on the record, we are unable to discern which use was the single incident that formed the basis for this finding.

But we come to a different conclusion regarding the other specification where the military judge excepted the "divers occasions" language. Specification 5 of the original Charge alleged that Appellant "did, at or near Tokyo, Japan, and Mt. Fuji, Japan, on divers occasions between on or about 1 April 2000 and on or about 31 July 2000 wrongfully use lysergic acid diethylamide (LSD)."

---

[68] NK was a civilian. He had testified at the Article 32 investigation in this case, but refused to return to Japan for

The evidence concerning Appellant's use of LSD is limited to two occasions. SrA Sullivan testified that Appellant's wife told her that Appellant used a "pill named Buddha and acid" during a party at Mount Fuji. NK testified about an incident when Appellant said he was feeling the effects of LSD. While NK and the Scheurers were driving from Yokota Air Base to Roppongi, Appellant's wife gave half of an LSD tab to NK, who took it and experienced "[m]ild hallucinations." Because the record contains evidence of only two LSD uses, when the military judge excepted the language, "and Mt Fuji, Japan, on divers occasions" from specification 5, he was necessarily finding Appellant guilty of the only other use, about which NK testified.

Our uncertainty concerning the basis for the finding of guilty to specification 3 requires that we set aside that finding. As we explained in Walters, where the conversion of a "divers occasions" specification to a single occasion specification prevents the Court of Criminal Appeals from determining the factual basis for the conviction, the "ambiguous verdict" prevents the "proper exercise of [the Court of Criminal Appeals'] appellate review authority under Article 66(c)."[69] This conclusion flows from the prohibition against a Court of

---

the court-martial. Accordingly, the military judge considered a redacted version of his Article 32 testimony.
[69] Walters, 58 M.J. at 395 (discussing, with approval, United States v. King, 50 M.J. 686 (A.F. Ct. Crim. App. 1999) (en banc)).

Criminal Appeals "find[ing] as fact any allegation in a specification for which the fact-finder below has found the accused not guilty."[70] That limitation "precludes any proper appellate review of this type of ambiguous verdict."[71] To affirm a finding of guilty, the Court of Criminal Appeals must itself weigh the evidence and be "convinced beyond a reasonable doubt of Appellant's guilt of engaging in wrongful use on the same 'one occasion' that served as the basis for the [court-martial's] guilty finding."[72] But "[w]ithout knowing which incident that Appellant had been found guilty of and which incidents he was found not guilty of, that task is impossible."[73]

Of course, this problem is easily avoided. As we noted in Walters, where a "divers occasions" specification is converted to a "one occasion" specification, the finder of fact should substitute language into the specification to "clearly put the accused and the reviewing courts on notice of what conduct served as the basis for the findings."[74] But in this case, which was tried almost two years before Walters was announced, the military judge did not accompany the exception of "divers

---

[70] Id. at 396.
[71] Id.
[72] Id.
[73] Id.
[74] Id.; see also Jeffrey C. Hagler, Duck Soup: Recent Developments in Substantive Criminal Law, 2004 Army Law. 79, 97 (July 2004), at 97 (discussing how to avoid Walters issues).

occasions" with any substitution to specify the one occasion of use that formed the basis for the finding of guilty.

Because double jeopardy principles would bar any rehearing on incidents of which Appellant was found not guilty, and because ambiguous findings preclude distinguishing incidents that resulted in acquittal from the single incident that resulted in a conviction, the remedy for a Walters violation is to set aside the finding of guilty to the affected specification and dismiss it with prejudice.[75]  Accordingly, we set aside the finding of guilty to specification 3 of the original Charge and dismiss that specification with prejudice.

## DECISION

The findings of guilty to specification 3 of the original Charge and to Additional Charge 1 and its specification are set aside.  Those specifications and that charge are dismissed with prejudice.  The remaining findings of guilty as affirmed by the United States Air Force Court of Criminal Appeals are affirmed. The sentence is set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence or remand for a sentence rehearing if the court concludes that it cannot appropriately reassess the sentence.

---

[75] See 58 M.J. at 397; see also United States v. Seider, 60 M.J. 36 (C.A.A.F. 2004).

31

United States v. Scheurer, No. 04-0081/AF

CRAWFORD, Judge (concurring in part and dissenting in part):

I concur with the majority as to Issue I and III and dissent as to Issue IV. See my dissent in United States v. Walters, 58 M.J. 391, 397 (C.A.A.F. 2003) (Crawford, C.J., dissenting).

As to Issue II, I concur in the result. At the outset, I note that this case was tried before the decision in Crawford v. Washington, 541 U.S. 36 (2004). Thus, the initial question raised by this appeal is whether Crawford applies retroactively. Federal courts that have considered the question of Crawford retroactivity have done so in the context of a habeas petition. Cf. Bockting v. Bayer, 399 F.3d 1010 (9th Cir. 2005); Evans v. Luebbers, 371 F.3d 438 (8th Cir. 2004); Hirachetavag v. Attorney Gen. of California, 105 F. App'x 937 (9th Cir. 2004). For purposes of this opinion I would assume retroactivity, without deciding, and hold that Crawford is not applicable because there was no active police involvement to obtain evidence for trial. I would also rely upon the language of the Crawford opinion itself in conducting the legal analysis to support this holding.

For more than two decades, prior to Crawford, the Court held that a declarant's out of court statement could be admitted under a hearsay exception if (1) the declarant was unavailable at trial and (2) the prosecution could demonstrate indicia of

reliability or that the statement was "firmly rooted." Ohio v. Roberts, 448 U.S. 56 (1980). However, in Crawford, the Court held that "testimonial" hearsay statements may not be admitted unless the witness is available to testify and the defendant has the opportunity for cross-examination.

Crawford does not do away with the foundational requirements under the Military Rules of Evidence and does not change the hearsay rules. Crawford is "fundamentally about the hearsay rules" and not about offering statements other than for the truth of the matter stated or asserted. Id. at 59 n.9. The one thing we can say is that Crawford will not apply where the declarant is available and there is an opportunity for cross-examination.

What is testimonial? In Crawford, the Court noted that "[v]arious formulations of this core class of 'testimonial' statements exist." Crawford, 541 U.S. at 51. The Court expressly stated "[w]e leave for another day any effort to spell out a comprehensive definition of 'testimonial.'" Id. at 68. In determining what is testimonial the Court identified three "formulations of [the] core class of testimonial statements":

> [(1)] Ex parte in-court testimony or its functional
> equivalent -- that is, material such as affidavits,
> custodial examinations, prior testimony that the
> defendant was unable to cross-examine, or similar
> pretrial statements that declarants would reasonably
> expect to be used prosecutorially; [(2)] extrajudicial
> statements . . . contained in formalized testimonial

materials, such as affidavits, depositions, prior testimony, or confessions; [(3)] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Id. at 51-52 (citations and quotation marks omitted).

We need not decide which of these categories, if any, apply. Certainly statements made by Appellant's spouse in this case are not the type of "interrogations by law enforcement officers" that would constitute "testimonial" evidence within the meaning of Crawford.