# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MARCUS C. DOSHIER**
**United States Army, Appellant**

ARMY 20120691

Headquarters, United States Army Aviation Center of Excellence and Fort Rucker
Stephen E. Castlen, Military Judge
Major Angela D. Tucker, Acting Staff Judge Advocate

For Appellant: Ken B. Martin, Esquire (argued); Ken B. Martin, Esquire; Captain Aaron R. Inkenbrandt, JA (on brief and reply brief)

For Appellee: Captain Anne C. Hsieh, JA (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Steven J. Collins, JA; Captain Carl L. Moore, JA (on brief).

24 February 2015

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted sodomy with a child, five specifications of rape of a child under the age of twelve years, one specification of aggravated sexual contact with a child, one specification of indecent liberty with a child, four specifications of sodomy with a child, and one specification of possession of child pornography, in violation of Articles 80, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. 880, 920, 925, 934 (2006 & Supp. III 2010). The panel sentenced appellant to a dishonorable discharge, confinement for life with eligibility for parole, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged, except he did not approve the adjudged forfeitures. The convening

authority also deferred forfeitures until action and waived automatic forfeitures for a period of six months following action.

This case is before this court for review pursuant to Article 66, UCMJ. Three of appellant's assignments of error warrant discussion, and two merit relief. First, we correct a *Walters* issue of ambiguous findings where the government charged appellant "on divers occasions," presented evidence of crimes occurring on more than one occasion, and the panel found appellant not guilty of the "on divers occasions" language without specifying which instance formed the factual basis of the conviction. *See United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003). Second, we address the sufficiency and validity of the general verdict for appellant's conviction for possessing child pornography. Third, we address appellant's allegation of ineffective assistance of counsel and find that appellant has not established prejudice in his case. Lastly, we determine whether we can reassess appellant's sentence.

## BACKGROUND

Appellant stands convicted of multiple instances of sexually abusing his biological daughter, CD, and his niece through marriage, MB. CD testified that the abuse began when she was in kindergarten to first or second grade, while appellant was stationed in Germany. Appellant raped her by placing his penis in her vagina. Appellant was later stationed at Fort Rucker, Alabama, where CD testified appellant raped her several times, by penetrating CD's vulva with both his penis and finger. CD also testified that appellant anally sodomized her twice, and once used his mouth to sodomize her vagina.

MB testified appellant began touching her "inappropriately" after she had lived in his home at or near Fort Rucker approximately one month. The first touching began while MB and CD were taking a shower together. Appellant reached past the shower curtain, into the shower and touched both CD's and MB's vaginas. MB also testified that on another occasion in the girls' bedroom, appellant touched both her and CD's vaginas. Appellant also placed his tongue inside MB's vagina, which she referred to as her "front private part." Appellant once tried to insert his penis into MB's anus, but was unsuccessful. On yet another occasion, appellant placed his penis in MB's vagina before MB went to school.

Appellant used signals to let MB and CD know he was about to abuse them. For example, he would tell them to flush the toilet. CD and MB would then hold hands and walk into the bathroom, expecting to be abused. Appellant would follow them into the bathroom and sometimes would touch the girls' genitals with his hands.

2

DOSHIER—ARMY 20120691

Appellant was also convicted of possessing over four hundred images and photographs of child pornography. This child pornography was found on appellant's personal computer, under a password-protected folder called "marc doshier."

**LAW AND DISCUSSION**

*Excepting "Divers Occassions"*

Appellant alleges the panel entered ambiguous findings for three specifications. Our superior court has held that a court of criminal appeals cannot review a conviction for factual sufficiency under Article 66, UCMJ, when an appellant is charged with committing an illegal act "on divers occasions," but was found guilty at trial by exceptions and substitutions to a single unspecified act. *See United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003). When the phrase "on divers occasions" is removed from a specification, the effect is "that the accused has been found guilty of misconduct on a single occasion and not guilty of the remaining occasions." *United States v. Augspurger*, 61 M.J. 189, 190 (C.A.A.F. 2005). We cannot conduct a factual sufficiency review in such a context because a "Court of Criminal Appeals cannot find as fact any allegation in a specification for which the fact-finder below has found the accused not guilty." *Walters*, 58 M.J. at 395.

The government concedes two of the claims and further urges us not to affirm certain language from a third specification. Upon review of the record, we agree with the government and discuss each specification in turn.

First, in Specification 1 of Charge I, the government charged appellant with raping CD on divers occasions at or near Fort Rucker, Alabama. The panel entered not guilty findings for the "on divers occasions" language. The child victim, CD, testified that appellant raped her in her parent's bedroom. CD could remember appellant raping her one time in Germany, but stated "[i]t only happened once [at or near Fort Rucker] that I can remember." However, MB testified about another incident in MB's and CD's bedroom where appellant raped CD. In particular, MB testified that appellant raped CD before he raped her. In particular, MB answered "Yes, ma'am" when asked if appellant ever touched her front private part with his front private part. MB further explained "at first he did it to [CB], then he came over and did it to me." In our view, the panel could rationally have convicted appellant for raping CD based on either incident. The finding of guilty of Specification 1 of Charge I is thus ambiguous.

Second, in Specification 2 of Charge III, the government charged appellant with sodomizing CD on divers occasions at or near Fort Rucker, Alabama. CD testified about two incidents where appellant anally sodomized her. The first incident was in CD's bedroom at night, and the second occurred in the dining room while other family members were outside. The panel returned not guilty findings

3

for the "on divers occasions" language in the specification. The findings do not distinguish which incident formed the basis for this conviction, and thus the finding of guilty for this specification is ambiguous as well.

The third specification at issue does not strictly involve a *Walters* issue, but does require relief. Specification 8 of Charge I alleged that appellant engaged in sexual contact with MB on divers occasions by touching her breasts and anus. Like the other specifications, the panel found appellant not guilty of the "on divers occasions" language. However, MB testified that appellant only put his hands on her breasts once. She also testified that he did not touch her "private part number two," which was her term for anus.[1] Accordingly, the findings are not ambiguous regarding appellant touching MB's breasts because the evidence reflects he only did so once. Further, the evidence is not legally sufficient for appellant touching MB's anus, because no such evidence was presented at trial. We will not affirm language referring to appellant touching MB's anus.

"[T]he remedy for a *Walters* violation is to set aside the finding of guilty to the affected specification and dismiss it with prejudice." *United States v. Scheurer*, 62 M.J. 100, 112 (C.A.A.F. 2005). Accordingly, we will take such action to the affected specifications in our decretal paragraph.

*The General Verdict for Possession of Child Pornography*

Among other offenses, the panel convicted appellant of knowingly possessing over four hundred photographs and images of child pornography of minors engaged in sexually explicit conduct, in violation of Clauses 1 and 2 of Article 134, UCMJ. In charging the panel, the military judge instructed:

> In summary, you must review each image and determine whether it is child pornography. You may determine that all are child pornography or that none are child pornography. However, if you determine that some are

---

[1] Appellant argues the findings are ambiguous for appellant touching MB's anus because MB testified that appellant touched her "front private part" on multiple occasions without explicitly describing what part of her anatomy "front private part" represented. Put another way, appellant argues that MB could be referring to her anus when discussing her "front private part." However, MB could distinguish between her vagina and her anus and also used the terms "front private part" and "back private part." We are convinced beyond a reasonable doubt that MB was not discussing her anus when she used the term "front private part."

child pornography, then you must specify which images
either are, or are not, child pornography.

While deliberating, the panel reviewed approximately six hundred images of alleged child pornography. The panel returned a general verdict finding appellant guilty of the specification as drafted: that is, of knowingly possessing over four hundred images and photographs of child pornography.[2]

It is apparent from our review of the evidence that some of the images presented to the panel clearly do not constitute child pornography.[3] As appellant notes in his brief, some images include depictions of a door, a sign, the back of someone's head, fully-clothed children, children in bikinis, and images too small to determine their content. However, we have reviewed every image and are convinced beyond any reasonable doubt that at least three hundred of these files constitute child pornography.

This issue, however, is not merely one of sufficiency of the evidence and affirming appellant's possession of three hundred images of child pornography without further analysis. We must determine whether we can affirm possession of three hundred images and photographs of child pornography in light of the panel's general verdict. When charges implicate both criminal and constitutionally protected conduct, the distinction between what is permitted and what is prohibited constitutes a matter of "critical significance." *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003). "Where a general verdict of guilt is based in part on conduct that is constitutionally protected, the Due Process Clause requires that the conviction be set aside." *United States v. Barberi*, 71 M.J. 127, 128 (C.A.A.F. 2012) (citing *Stromberg v. California*, 283 U.S. 359, 368–70, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)). "[I]f a factfinder is presented with alternative theories of guilt and

---

[2] The record contains two enclosures to the findings worksheet, which list the name of every file of alleged child pornography, along with a corresponding box for the panel to mark whether that particular file constitutes child pornography. The panel president initialed the first page of each attachment, circled "yes" on the first block, and wrote "all" next to his initials. Given these enclosures and the findings, it appears that the panel found all of the images and photographs constituted child pornography.

[3] Appellant argues this issue as the panel members not following the military judge's instructions. However, in our view, the ultimate issue is not whether the members followed instructions, but rather the sufficiency of the evidence and the validity of the verdict as a matter of law for appellant's possession of child pornography conviction.

one or more of those theories is later found to be unconstitutional, any resulting conviction must be set aside when it is unclear which theory the factfinder relied on in reaching a decision." *United States v. Cendejas*, 62 M.J. 334, 339 (C.A.A.F. 2006) (citing *Stromberg,* 283 U.S. at 368).

The panel reviewed some evidence that was constitutionally protected. We therefore must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Barberi*, 71 M.J. at 132 (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967) (additional citation omitted)). "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *United States v. Gardinier,* 67 M.J. 304, 306 (C.A.A.F. 2009) (citation and quotation marks omitted). "An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless." *Chapman,* 386 U.S. at 23–24 (citation omitted).

The Air Force Court of Criminal Appeals has identified three factors in determining whether the evidence complained of might have contributed to the verdict: (1) The quantitative strength of the evidence; (2) The qualitative nature of the evidence; and (3) The circumstances surrounding the offense as they relate to the elements of the offense charged. *United States v. Piolunek*, 72 M.J. 830, 838 (A.F. Ct. Crim. App. 2013), *review granted* 73 M.J. 281 (C.A.A.F. 2014). Here, the first two factors weigh in favor of the government, given the amount and type of child pornography presented to the panel. The government presented an overwhelming number of child pornography files. The evidence of minors engaged in sexually explicit content in those files is similarly overwhelming. For example, the military judge admitted a report prepared by the National Center for Missing and Exploited Children documenting that the child pornography in this case came from well-established series, including the Vicky Series and the Tara Series.

The circumstances of this case are quite distinct from *Barberi. Barberi* involved six photographs presented to the panel, of which only two constituted child pornography. 71 M.J. at 129. The other four photographs were constitutionally protected. *Id.* at 130-131. The panel in *Barberi* faced a substantially different evidentiary posture than the panel in this case. This panel erred by apparently finding that every file submitted to it constituted child pornography. However, panels from time to time make guilty findings where the evidence is insufficient as a matter of law. *See, e.g.*, *United States v. Bright*, 66 M.J. 359 (C.A.A.F. 2008) (setting aside a rape conviction for legal insufficiency). The panel's verdict was correct in law and fact for at least three hundred images of child pornography, an amount of child pornography substantially greater than the images at issue in *Barberi*.

6

The panel surely considered the constitutionally protected evidence, as it weighed all the evidence. However, it is an altogether different question as to whether the panel's consideration of this constitutionally-protected evidence invalidates the panel's decision as to at least three hundred images of child pornography. We are convinced beyond a reasonable doubt that a rational panel would have found appellant guilty of possessing at least three hundred images and photographs of child pornography absent the error. The quantity and quality of the evidence in question is too overwhelming to conclude otherwise.

*Ineffective Assistance of Counsel*

Appellant, in a statement made under penalty of perjury and through his appellate defense counsel, makes a variety of allegations that his trial defense counsel were ineffective. One of appellant's ineffective assistance of counsel claims warrants discussion, but no relief.[4]

Appellant alleges that his defense counsel did not discuss with him in great detail his testimony on the merits at trial. Appellant claims his trial defense counsel suggested he testify, but never discussed the pros and cons of testifying on the merits. Appellant asserts he would have considered his counsels' advice on whether or not to testify. He does not explain how his testimony would have changed in any event. Appellant also alleges that his defense counsel never discussed potential cross-examination questions with him.

Upon order from this court, appellant's trial defense counsel filed affidavits responding to appellant's allegations. Their affidavits directly contradict appellant's claim regarding his testimony. They claim appellant was resolute in his decision to testify and always wished to explain himself to the panel. Counsel also claim they prepared him for direct examination and cross-examination and explained to him the pros and cons of testifying.

To support an ineffective assistance of counsel claim, appellant must meet a two-prong test that his defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Wean*, 45 M.J. 461 (C.A.A.F. 1997). *See also United States v. Green*, 68 M.J. 360 (C.A.A.F. 2010). We have the authority to resolve an

---

[4] For example, among other claims, appellant argues that his trial defense counsel relied on appellant's theory that his ex-wife "brainwashed" the victims into making allegations against him. However, appellant has not presented this court with a viable alternate theory sufficient to create a reasonable probability of a different result.

ineffectiveness claim on the prejudice prong, without resolving the first prong. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Upon review of the record, appellant has not met his burden of establishing prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 468 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, the affidavits are in material factual conflict regarding appellant's decision to testify and his counsels' advice to him about testifying. However, we need not order an evidentiary hearing in this case because "the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

Appellant has not met his burden of prejudice for two reasons. First, we are convinced the result would have been the same if appellant had not testified. The government presented a strong case against appellant. The child victims, MB and CD, testified powerfully and credibly about the crimes appellant committed against them. The evidence of appellant's possession of child pornography was similarly overwhelming. While a finder of fact could use appellant's testimony as evidence against him, *see United States v. Pleasant*, 71 M.J.709 (Army Ct. Crim. App. 2012), the panel did not need appellant's testimony to convict him. The government's case was compelling without appellant's testimony. Consequently, the absence of appellant's testimony does not present a reasonable probability of a different result.

Second, appellant has not explained how he would have testified differently, even assuming every fact in his affidavit in his favor. For example, he has not explained how the theory or substance of his testimony would be different. Given this absence of explanation, appellant has not met his burden to establish a reasonable probability of a different result if his testimony had changed.

*Sentence Reassessment*

Based on the errors noted above, we must determine whether we can reliably reassess appellant's sentence. *See United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013); *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In determining whether we can reassess the sentence, we apply several non-exhaustive factors:

1) Dramatic changes in the penalty landscape.

2) Whether an appellant chose sentencing by members or a military judge alone. As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members. This factor could become more relevant where charges address service custom, service discrediting conduct or conduct unbecoming.

3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. at 15-16.

The first factor weighs in favor of the government. Appellant still faces a maximum punishment of confinement for life, among other punishments. However, we recognize that we are dismissing with prejudice several offenses authorizing confinement for life. Second, while members sentenced appellant, these offenses are not uniquely military offenses. Third, appellant remains convicted of repeated, sexual abuse of his biological daughter and his niece, along with his conviction for possessing substantial child pornography. Thus, while we dismiss some specifications covering some instances of child sexual abuse, appellant's broad swath of criminal conduct remains palpable. Fourth, we have the familiarity and experience with the remaining offenses to reliably determine what sentence would have been imposed at trial.

After weighing these factors, we are convinced the panel would have adjudged the same sentence. Appellant repeatedly sexually abused his natural daughter, CD, and his niece through marriage, MB. He also downloaded hundreds of images of child pornography to satisfy his criminal sexual desires.

**CONCLUSION**

On consideration of the entire record, the findings of guilty of Specification 1 of Charge I and Specification 2 of Charge III are set aside. Those specifications are dismissed with prejudice. We only affirm so much of Specification 8 of Charge I as follows:

> In that [appellant], U.S. Army did at or near Fort Rucker, Alabama, between on or about 10 February 2009 and on or about 17 September 2010, engage in sexual contact, to

9

wit: touching with his hand the breasts of MB, a child who
had not attained the age of 12 years.

We only affirm so much of the Specification of Charge IV as follows:

In that [appellant], U.S. Army, did, at or near Fort Rucker,
Alabama, on or about 1 September 2010, knowingly
possess at least three hundred photographs and images of
child pornography of minors engaged in sexually explicit
conduct, this conduct prejudicial to good order and
discipline or likely to bring discredit upon the armed
forces.

The remaining findings of guilty are AFFIRMED. The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of the findings, hereby set aside by this decision, are ordered restored.

Judge CAMPANELLA and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court